29 June 1998

MEMORANDUM FOR Jacob N. Erlich, Esq.
Perkins, Smith & Cohen, LLP
One Beacon Street
Boston, MA 02108-3106

FROM: ESC/JAZ
Attn: Stan Collier
40 Wright St.
Hanscom AFB MA 01731-2903

SUBJECT: CRDA WITH PDR

1. I have made inquiry re the notice provision and Bill Kaveny indicated to send to the addresses indicated and they will be forwarded at that time to the appropriate person since RL does not exist anymore. He suggested that the CRADA be amended but considering that it expires in November this is a waste of time. It appears that no other work is being done Under the Agreement and that no other extension is considered. AFRL is still getting settled on some of these issues.

2. As to the first future meeting, your inputs on the issues related previously will assist greatly in moving things along. I think at date within about two weeks after we get your response is acceptable.

3. Heads up on major issue: The people at the lab believe that the targets provided by Mr. Preston were not made UNDER the AGREEMENT and were only provided gratuitously without any non-disclosure agreement between the parties. In the original CRADA and not amended thereafter, it notes at para. 2.0, "To complete this work, PDR, Inc. and RL will work together to fabricate, ..., such targets to deposit thin films of GaN." The CRADA calls for the targets to be made by a plasma spray process. See Title of Work Plan. It appears that Mr. Preston's targets were made by a hot pressing technique, not plasma spraying, and further Mr. Preston submitted a patent application as sole inventor concerning the process to make his targets. This information has been considered proprietary by Mr. Preston. It further appears that Mr. Preston gave permission to Mr. Suscavage to use the testing information in his thesis in order to induce testing of the non-CRADA targets by the lab thus negating any claim of proprietary information. Further no information was identified as proprietary

except for the process claimed by Mr. Preston. If any of these statements are incorrect, please provide information otherwise.

STANTON E. COLLIER
Deputy Chief, Intellectual Property Division
Office of the Staff Judge Advocate

JUN-29-98 08:52A ESC/JAZ 617 377-4820 P.03
06/29/98 10:31 FAX 6177424358 THE COMMONWEALTH 004

**PERKINS, SMITH & COHEN, LLP**

ONE BEACON STREET • BOSTON, MASSACHUSETTS 02108-3106

(617) 854-4000 FAX: (617) 854-4040

E-MAIL: psc@pscboston.com

RICHARD A. HOWARD
ROBERT B. CROWE, P.C.*
NORMAND F. SMITH, III
FRANCIS E. PERKINS, JR.
JERRY COHEN, P.C.*
IRVING BALLOWAY
LAWRENCE G. GREEN
HARVEY M. BURG, P.C.
JAMES A.G. HAMILTON
ROBERT D. FRIEDMAN
EDWARD N. PERRY
KENNETH A. KOHS
JONATHAN C. GUEST
STEPHEN Y. CHOW
DAVID RAPAPORT
ROBERT J. POMERENE
RICHARD I. MILLER
NANCY G. O'CONNELL
HARRY S. MILLER
J. DAVID MORAN, P.C.
EDWIN H. PAUL
LAWRENCE J. CASEY
SUSAN E. STENGER
RONALD A. SORINO

SARA A. RAPPORT
MATTHEW J. TUTTLE
THERESA L. MERCOGLIANO
THERESA FINN DEVER
SCOTT E. BETTENCOURT
KAREN E. NELSON
RONALD A. CHUNG-A-FUNG
PETER J. WOLBIN
MAGGIE A. LANGE
SUSAN KARPP SHAPIRO
CHRISTOPHER R. DEAGAZIO
CHRISTINE M. KUTA

OF COUNSEL

HERBERT S. URBACH
WILLIAM M. SIMMONS*
JACOB N. ERLICH
KAREN MATHIASEN
JULIANE BALLIRO
BRADLEY D. BELT**
CHARLES D. ABLARD**
HARVEY KAYE**
STEVEN C. SIMON
IRA M. SHOOLMAN

*ADMITTED IN DC AND MA
**ADMITTED ONLY IN DC

WASHINGTON, D.C. OFFICE:
PERKINS, SMITH, COHEN & CROWE, LLP
1001 PENNSYLVANIA AVENUE, N.W., SUITE 460N
WASHINGTON, D.C. 20004
(202) 786-6757
FAX: (202) 786-4246

July 30, 1998

VIA FAX (781-377-4820) AND FIRST CLASS MAIL

ESC/JAZ
Attn: Stanton Collier, Esq.
40 Wright Street
Hanscom Air Force Base, MA 01731-2903

Re: USAF CRDA No. 96-RL-07 dated 22 May 1996 and Amendment 1 dated 21 May 1997 Between Rome Laboratory (now AFRL) and PDR, Inc. (hereinafter "CRDA", also referred to CRADA)

Our File: 11286-1

Dear Stan:

This correspondence is in response to your letter dated June 8, 1998 (Paragraphs 1-3 and 5) and your faxes of June 25, 1998 and June 29, 1998 (hereinafter "Faxes"). Your letter of June 8, 1998 also presents Paragraph 4 directed toward Perkins, Smith & Cohen, LLP. and me. A full response to Paragraph 4 will be addressed by separate letter.

However, to correct your understanding of our representation of Mr. Preston and/or PDR, Inc. (PDR), please note that neither I nor any other present or past member of Perkins, Smith & Cohen, LLP has ever represented Mr. Preston and/or PDR, Inc. in the preparation, filing or prosecution of any patent application(s) of Mr. Preston or has ever interviewed Mr. Suscavage with respect to such patent application(s). Furthermore, neither I nor any other present or past member of Perkins, Smith & Cohen, LLP has ever been involved in the drafting of the present CRDA dated 22 May 1996 or amendment thereto dated 26 May 1997.

With respect to Paragraphs 1-3 and 5 of your letter dated June 8, 1998 and the Faxes, in summary, the following five issues are presented below:

1) The status of the two PDR, Inc. proprietary GaN targets which Mr. Preston and PDR state fell under and became part of the CRDA.

2) PDR's (i.e. Mr. Preston's) right under the CRDA or other arrangement to receive all data and/or other related information obtained from the use by AFRL of PDR, Inc's. proprietary GaN targets.

3) PDR's (i.e. Mr. Preston's) right to review data and/or other information generated by AFRL related to PDR's proprietary GaN targets and determine its proprietary nature prior to any public release of such data and/or other information.

4) PDR's (i.e. Mr. Preston's) right under the CRDA to review an Invention Disclosure submitted by AFRL employees who also performed work under the CRDA.

5) Mr. Preston's right to obtain the name of the AF Reviewing Official overseeing disputes with respect to the CRDA.

For purposes of clarity, comments related to these issues are provided below in narrative format.

(1) Proprietary Targets

PDR, Inc., entered a Cooperative Research and Development Agreement (CRDA), identified above, with Air Force Rome Laboratory, now AFRL (hereinafter "AFRL"), for the main purpose of ultimately commercializing technology dealing with gallium nitride (GaN). The CRDA was and still is a cooperative effort in which both parties, that is, both AFRL and PDR would benefit by the subsequent commercialization of the GaN technology, a procedure well within the intent of the Federal Technology Transfer Act (FTTA).

The CRDA appeared to be a successful cooperative venture between PDR, Inc. and AFRL as evidenced by (a) PDR providing its only two proprietary GaN targets ( at a cost to PDR of approximately $10,000.00 and $5,000.00, respectively) to AFRL, under the CRDA, (b) the exchange of information with respect thereto between AFRL and PDR, (c) furtherance of the CRDA as evidenced by its signed Amendment 1, and (d) subsequent negotiations for further amendments to the CRDA. There were no disputes, no misunderstandings and no controversies with respect to the work being performed under the CRDA, and it appeared that work was successfully performed by both AFRL personnel and PDR personnel. PDR has expended substantial funds under the CRDA, more specifically, setup, material and subcontracting expenses. In addition, internal expenses and other expenses were incurred by PDR in compliance with its joint effort with AFRL to develop the plasma system still being used at AFRL. Furthermore, PDR has made AFRL aware of the proprietary nature of work performed under the CRDA and both PDR and AFRL have agreed to the public release of some of the work performed under the CRDA, such as, for example, the AFRL presentation at the MRS Conference on Dec. 5, 1997.

(2)/(3) Receipt and Review of Information

Only recently, approximately the end of March 1998, when Mr. Preston did not feel he received all the data and/or other related information with respect to the GaN targets, was a clarification of the CRDA sought from Julian Siegel, Esq., Chief, ESC/JAZ. Until that time, all work on the two GaN targets provided by PDR under the CRDA to AFRL personnel was performed in a cooperative manner.

PDR respectfully contends that the GaN targets (the first provided in June of 1997 and the second by request of AFRL in August of 1997) were provided under the CRDA, and their

acceptance by AFRL as part of the CRDA and continued use thereof by AFRL constitutes acceptance of the targets by AFRL under the CRDA. The targets clearly fell under Tasks 5-8 and any amendment thereto, as being an acceptable substitute for the plasma produced targets originally contemplated by the CRDA. The plasma system was jointly designed and assembled by PDR and AFRL and is still a viable research tool having utility even after the present target technology becomes introduced to the commercial market. PDR never intended the two GaN targets to be gifts to the government, nor has there been any material documentation by Mr. Preston or anyone else on behalf of PDR or by AFRL or by any government agency or representative that these targets were gifts accepted by the government. All overt actions by AFRL led Mr. Preston to believe, reasonably, that the two proprietary GaN targets fell under the CRDA.

Further support for Mr. Preston's and PDR's position can be found in Dr. Alexander's (Chief, EM Materials Branch, Electromagnetics Division, Sensors Directorate, Air Force Research Laboratory) email of 12 March 1998 to Colin E. C. Wood of the Office of Naval Research, with a copy to Mr. Preston which states:

> ... Our CRADA work with Ken Preston's company is designed to determine how useful his GaN pucks are for PLD and sputtering and -- equally important To provide an environment in which, without damaging the reputation of his product, he has opportunities to correct shortcommings we may discover....

In a further email of 12 March 1998 from Dr. Alexander to Mr. Preston, Dr. Alexander states:

> ... Obviously, we would like the first opportunity to work with your targets, be the first people to publish reports of high quality GaN deposited by sputter and PLD techniques, and get legitimate credit for helping bring GaN target technology to fruition. However, the targets are yours, not ours. Although we've shared our thoughts about using the CRADA and our lab as a test bed for your target, prior to widespread distribution, you ultimately are the only person who can make business decisions in what you consider to be the best interests of your company....

It is quite apparent from the above that no questions existed with respect to PDR's GaN targets and their relationship to the CRDA. Clearly, there appeared to be no controversies with respect thereto. It is well recognized that the purpose of a CRDA is to provide a mechanism for cooperation between federal laboratories and the private sector, with the ultimate goal being the commercialization of technology developed under the CRDA. This appeared to be the case in the present CRDA. The targets, exclusively presented to AFRL, were presented under the scope of the CRDA even though the proprietary process used to make PDR's GaN targets was not the plasma spray deposition process originally contemplated by the CRDA. AFRL has never taken any action inconsistent with this concept. For example, AFRL has never provided a written acceptance of the targets to Mr. Preston as being a gift, or even a simple receipt. As far as we know AFRL records were never created or amended to list the GaN targets as government property. If AFRL did not wish to accept these targets under the CRDA they should have promptly returned the targets to PDR rather than waiting until the targets were used under the CRDA (target No. 1 has been returned and target No. 2 is still in the possession of AFRL).

(4)/(5) Invention Disclosure/Reviewing Official

It is clearly pointed out in De Lorme Publishing Company, Inc. v. The National Oceanic and Atmosipheric Administration of the United States Delpartment of Commerce, 917 F.Supp. 867 (D.Me 1996) that:

> Congress enacted the FTTA in 1986 "to improve the transfer of commercially useful technologies from the Federal Laboratories and into the private sector" to strengthen the nation's military and economic competitiveness .... Toward that end, the "Act authorizes a broad range of cooperative research and development arrangements where there is a mutual interest between the laboratory mission and ... private sector organizations...." Id. at p. 871

Furthermore, as set forth in the above case, information generated under the CRDA or otherwise should remain free from fear of public disclosure. More specifically,

> In 1989, Congress amended the FTTA to provide, with respect to cooperative research and development ventures, two types of protection from disclosure for "commercial ... information that is privileged or confidential."...First, the Act prohibits an agency from disclosing such information if it "is obtained in the conduct of research or as a result of activities under this chapter ... from a non-Federal party participating in a [CRADA]." ... Second, the act allows an agency to withhold information for up to five years if that information "results from research and development activities under this chapter and that would be ... commercial ... information that is privileged or confidential if the information had been obtained from a non-Federal party participating in a [CRADA]."...Congress concluded that such protection was necessary because "the threat of disclosure under [FOIA] of commercial information, developed under the CRADA or otherwise, has been the biggest reason to date for companies declining to enter CRADAs." Id. at p. 872

Thus, it is quite apparent that the relationship between the federal laboratory and the private sector company is one of cooperation, with the ultimate goal being the commercialization of technology developed under such a CRDA (CRADA) without fear that information developed under the CRDA or otherwise would be publically released. This is exactly what appears to have taken place under the present CRDA between AFRL and PDR. With respect to work performed under the CRDA, the above cited case further sets forth the following:

> The FTTA does not define what it means by activities "conducted under" the statute. Standing alone, the phrase is obviously broad and not limited to what happens after a particular CRADA is signed. The legislative history supports a broad reading .... Congress anticipated that "firms may be attracted to a laboratory by interest in an existing invention" in addition to expected future inventions .... That broad interpretation makes sense in light of the purpose of both the FTTA and the original Stevenson-Wydler Technology Innovation Act, which created the technology innovation chapter, "to stimulat[e] improved utilization of federally funded technology developments by... the private sector." Id. at p. 873

It is PDR's position that the two proprietary GaN targets fall under the CRDA and Mr. Preston is entitled to review data and information generated by AFRL in order to determine whether such data and information should be released to the public as provided by Articles 3.3 and 7 of the CRDA. As pointed out in the above case:

"Commercial" is given its ordinary meaning and applies broadly to information in which a private party would have a commercial interest if it had submitted the information to the government ... In determining whether commercial information is confidential, "courts do not focus upon" whether the information has customarily been regarded as confidential, "but instead" look to "the potential harm that will result from disclosure...." Therefore, commercial information:
"is confidential" for purposes of the exemption, if disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained. Id. at pp. 873,874

In the present situation, any inappropriate disclosure of such information would impair the government's efforts under the FTTA by discouraging private firms participating in CRDAs in the future, and harm PDR's competitive position by giving the information to competitors after PDR had invested considerable resources in developing the GaN targets for commercial application.

With respect to the alleged invention made by the same AFRL employees performing work under the CRDA, PDR is entitled to have such invention disclosed to Mr. Preston in order to make a determination of whether or not Mr. Preston may have contributed to its invention and/or if PDR should request a license from the Governmnt re such invention. The fact that the same AFRL employees working on the CRDA also made an invention related to work being performed under the CRDA raises sufficient question as to its being made under the CRDA and PDR should have the opportunity to be involved in such a determination as provided by Article 5.1 of the CRDA.

Your observation that AFRL should suspend the CRDA does not appear warranted since PDR's second GaN target is still being used by AFRL. There is insufficient controversy at this time to support the suspension of the CRDA, and as long as work can be performed on the second GaN target and PDR has access to the data and/or other information generated as a result thereof , work on the CRDA should continue. Thereafter, PDR respectfully requests (a) the return of the second PDR target, (b) shared use of the plasma system (jointly developed by AFRL and PDR, (c) the data and other information obtained by AFRL as a result of their use of PDR's targets, and (d) no public dissemination of the data and other information without review thereof by Mr. Preston as to their proprietary nature and permission of PDR for such dissemination.

Since it is still unclear to PDR who the Air Force Reviewing Official is with respect to this CRDA. PDR and Mr. Preston respectfully requests the name of the Air Force Reviewing Official overseeing the CRADA.

In conclusion, based upon the above information:

1) The two PDR proprietary GaN targets fall under and became part of the CRDA when AFRL accepted the targets, worked with the targets in accordance with the terms of CRDA, provided some of the data and other information to PDR based upon the use of the targets and returned one of the targets to PDR at the request of Mr. Preston. No documentation supports any other conclusion.

2) Mr. Preston has already received some data and/or other related information obtained from the use by AFRL of PDR, Inc's. proprietary GaN targets and only seeks further

supplemental information. Never during the course of the CRDA has there been any indication that such supplemental information would be withheld from PDR.

3) PDR requests that Mr. Preston be allowed to review data and/or other information related to PDR's proprietary GaN targets generated by AFRL and to determine the proprietary nature, if any, of such data and/or other information prior to any public release of such data and/or other information as provided by Articles 3.3 and 7 of the CRDA.

4) PDR clearly has a right under the CRDA for Mr. Preston to review of the alleged invention of AFRL employees who also are working under the CRDA as provided by Article 5.1 of the CRDA.

5) It is still unclear to PDR who the Air Force Reviewing Official is with respect to this CRDA. Mr. Preston respectfully requests the name of the Air Force Reviewing Official overseeing the CRDA. Mr. Preston is also independently in the process of obtaining the name of the Reviewing Official.

As will be particularized in a separate letter to you with respect to Paragraph 4 of your letter of June 8, 1998 pertaining to Perkins, Smith & Cohen, LLP and me, I was originally retained by Mr. Preston (with Dr. Alexander's concurrence) by reason of my experience in technology transfer and commercialization of inventions under CRDAs, there being no disputes between the parties at the time. In light of the above facts and the current status of the CRDA, PDR and Mr. Preston have no further need of my services, and, by mutual consent my representation of him is therefore at an end with respect to this matter. Please direct any future correspondence, including the name and address of the current Air Force Reviewing Official of the CRDA, to Mr. Preston at PDR, Inc., 54 Adams Street, Foxboro, MA 02035.

Sincerely,

Jacob N. Erlich

cc: Julian Siegel, Esq.

11286-1/ltrCollier