PDR Inc.
54 Adams Street
Foxboro, MA 02035
(508) 543-4052
Email: foxboro@msn.com

April 8, 2002

Captain John Reynolds
Department of FSAF - IGQ
1140 Air Force Pentagon
Washington DC 20330-1140
Ph 703-588-1557
Fx 703-696-2555

Dear Captain Reynolds,

PDR Inc. is submitting this request for the Air Force's Acquisition Office review of our case. In addition, the relevant invoice is attached.

The correspondence detailing our intellectual property's abuse and reasons for our claim can be found in a file created by Mr. Julian Siegel Esq. Chief ESC/JAZ (who is holding this file), Mr. Stan Collier Esq. ESC/JAZ (who has retired and was replaced by Mr. Thomas Stover Esq. ESC/JAZ and myself. PDR Inc. has numerous other documents in support of this case and invoice, which we would gladly provide for you review.

PDR Inc. is entitled to compensation for material and labor spent and for which the corporation received no benefit.

Regards,

Ken Preston

Attachment 1 Invoice number 2002-3.

**IMPORTANT NOTICE: This facsimile transmission is intended to be delivered only to the named addressee, and may contain material that is confidential, proprietary or subject to legal protection or privilege. If it is received by anyone other than the named addressee. The recipient should immediately notify, the sender at the address and telephone number set forth herein and obtain instructions as to the disposal of the transmitted material. In no event should such material be read or retained by anyone other than the named addressee, except by express authority of the sender or the named addressee.**

PDR Inc.
54 Adams Street
Foxboro, MA 02035
(508) 543-4052
Email: foxboro@msn.com

April 8, 2002

Air Force's Acquisition Office

# Invoice 2003-1

PDR Inc. of Foxboro, MA is submitting this claim as an invoice in the amount of $ 2, 765,000.00, two million seven hundred sixty five thousand dollars for labor and material supplied to various Air Force organizations including but not limited to the bellow listed line items from 22 May 1996 * to 23 Oct 2001 *. Detailed justification to support this invoice can be found in the original file kept at ESC/JAZ Hansom, MA. and PDR is willing to assist in the examination of the file along with documents retained,

1. Supporting Air Force's Suscavage et al patent number 6,113,985 issuance date September 5, 2000 - Doctoral Degree, Patent application and private independent commercial venture with undisclosed company

   a. Labor and material $ 709,552.50

2. Support Air Force's Drehman, et al, patent number 5,378,341, issue date January 3, 1995 – Nitride Off-Axis sputtering enhancement of patented number # and independent publication of work and commercial venture with undisclosed company

   a. Labor and material $ 539,552.50

3. Support Air Force, Inventor Alexander patent number 6,306,739, issue date, October 23, 2001 - Provide proprietary, public and critical technology research literature, information generate by Government laboratories, Universities, Commercial companies and private parties for patent invention and commercial venture with undisclosed companies.

   a. Labor and Material $ 498,532.50

4. Support legal department in the review, compilation, documentation and validation of the above three activates.

   a. Labor and Material $ 828,362.50

Total $ 2,576,000.00

Kenneth Preston
PDR Inc.

* Start date of the agreement 22 May 1996
** Issuance date of patent no. 6,306,739, Oct 2001, item 3

**PDR Background information submitted 4-18-2001**

Background:

USAF CRDA No. 96-RL-07 dated May 22, 1996 and Amendment 1 dated May 21, 1997 were signed between PDR, Inc. and AFRL for the main purpose of ultimately commercializing technology dealing with gallium nitride (GaN).

During the period from October 1996 to April 1997, PDR independently developed a unique method to produce GaN sputtering targets. AFRL enthusiastically accepted two targets, one in May 1997 and the other in October 1997, for characterization and assessment of their applicability for deposition of GaN thin films. Based on the information supplied to us by AFRL, we filed a patent application on December 24, 1997. Under the terms of this CRADA agreement the Air Force was notified that the patent application was filed. The patent No. 5,942,148 was approved on August 24, 1999.

There were no identified disputes; no misunderstandings and no controversies with respect to the work being performed under the CRADA; and it appeared that both sides were extremely excited by the initial results. Both PDR and AFRL have agreed to the public release of some of the work performed under the CRADA, through the AFRL presentation at the MRS Conference on December 5, 1997. The apparent opportunities from this discovery lead to PDR with the approval of AFRL retaining a former Air Force attorney. This attorney was paid by this corporation and had a mandate to guide our joint efforts to it highest potential. Both sides were discussing opportunities for an additional funding through SBIR and STTR proposals, all the intellectual, financial and marketing data considered proprietary were made available to AFRL under the agreement, and I personally invested an additional $80,000 based on very favorable reviews by the AFRL personnel. During the same time, a consolidation of my other CRADA agreements (three in total) was implemented to help AFRL in reorganization of its activities. The proprietary plasma system built at AFRL's premises was an essential part of other CRADA efforts elsewhere and was so identified in one of the other agreements with AFRL's amendment. All these efforts were being funded exclusively by PDR.

On January 13, 1998, Mr. Suscavage after seven exclusive months abruptly stated that the targets didn't work. This is a day before a submission of the SBIR proposal, which was jointly prepared by both sides. At that moment, all lines of communication regarding this matter were shut down. It was, and is our position that all technical information and any inventions made by the same employees performing work under the CRADA should be disclosed to PDR in order to make determination whether or not I may have contributed to these inventions and/or if PDR should request a license from the government for such inventions. AFRL never fully complied with those requests to this day. This was a clear breach of contract as defined by the CRADA agreement. Mr. Drehman notified us that patents were being submitted on technology derived from the use of our targets.

There was a lot of excitement about our technology by third parties. Mr. Colin E. C. Wood of the Office of Naval Research personally endorsed our technology and offered his support in finding funding sources to advance its further development, which by the



FOR OFFICIAL USE ONLY
- not for public disclosure without the consent-

way AFRL was always promising but never did. His involvement led to contacts with university and government research centers prominent in GaN research. A total of three joint research and development proposals with third party institutions (Boston University, Stanford University and Idaho National labs) were written. Again all the proprietary information was made available to the AFRL as we always identified ourselves as working jointly with the AFRL.

In response Dr. Alexander's (Chief, EM Materials Branch, Electromagnetic Division, Sensors Directorate, Air Force Research Laboratory) email of 12 March 1998 to Colin E. C. Wood of the Office of Naval Research, with a copy to Mr. Preston states:

…Our CRADA work with Ken Preston's company is designed to determine how useful his GaN pucks are for PLD and sputtering and – equally important to provide an environment in which, without damaging the reputation of his product, he has opportunities to correct shortcomings we may discover…

In a further email of 12 March 1998 from Dr. Alexander to Mr. Preston, Dr. Alexander states:

…Obviously, we would like the first opportunity to work with your targets, be the first people to publish reports of high quality GaN deposited by sputter an PLD techniques, and get legitimate credit for helping bring GaN target technology to fruition. However, the targets are yours, not ours. Although we've shared our thoughts about using the CRADA and our lab as a test bed for your target, prior to widespread distribution, you ultimately are the only person who can make business decisions in what you consider the best interests of your company…

It is quite apparent from the above that no questions existed with respect to PDR's GaN targets and their relationship to the CRADA.

In April 1998, Drehman presented very promising results on of-axis deposition of GaN thin films using the PDR target at the Air Force Headquarters. These results were an integral part of our STTR proposal with Stanford University.

In April 1998, Mr. Suscavage returned one of our targets. This target had a hole in it and clearly indicates that Mr. Suscavage extensively used it past January 13, 1998. Mr. Drehman disclosed that at least 25 depositions were performed by AFRL with our targets. We never saw any results from this work.

On June 14, 1998, Mr. Stan Collier officially notified us that our CRADA is being suspended and that our targets were never under the scope of the CRADA agreement and is being considered as gifts to AFRL. I was denied access to the premises. All my property was seized, including the plasma system. The inability to utilize this plasma system led to suspension of other CRADA agreements, which relied on this system for crucial depositional work. The above mentioned STTR proposals never saw a light of the day despite their originality and involvement of very prominent researchers.



FOR OFFICIAL USE ONLY
- not for public disclosure without the consent-

**PDR Background information submitted 4-18-2001**

Now within the benefit of hindsight we believe AFRL made everything in their power to stop our commercialization effort and inflict harm.

A month later Dr. Drehman signed a new CRADA agreement with NZ Applied Technologies Inc. It is illegal to have two CRADA's with two different companies working in the same field by the same personnel. Or our CRADA unjustifiably was suspended to clear the way for unlawful transfer of our trade secrets and technology to another company?

Following many months of back and forth correspondence, I received the letter from Major General Richard R. Paul dated October 20, 1998, which stated his confidence in AFRL's intentions to resolve pending issues in good faith by the end of October 1998. Dr. Alexander responds and reiterates his initial position that targets were outside of the CRADA and that the suspension of the agreement stands.

I had no choice but to respond with an invoice to cover my expenses on targets and in addition demanded payment for targets usage by AFRL. Why AFRL, expected to have a valuable piece of property not covered by any agreement, as they insisted at the time, free? I also demanded the return of my second target and the plasma system, which were still in the possession of the lab.

In December 1998, I found an abstract by Dr. A. Drehman to be presented at MRS meeting in Boston that same month. Please note that it was submitted no later than July 1998, my target was used, and no acknowledgement of our involvement, and all the while AFRL was maintaining that targets are useless. Later AFRL choose not to proceed with the actual presentation.

In January 1999, Mr. Stan Collier called and suggested to put all the work under the extended old CRADA agreement. This decision was probably the result of some pressure from the Air Force Headquarters. Next many months saw continued delays and back and forth correspondence. On March 4, 1999, at the meeting with Dr. Alexander I was offered a license to a technology, which was not patented yet, as compensation. Dr. Alexander stated that he is not acknowledging my previous invoices and returned my second target.

In April 1999, patent applications (AFB 00437 & AFB 00473) were filed and stated that the results of laser ablation depositions using my targets were unsatisfactory. This statement was later amended on my insistence.

During the same month, both AFRL's legal team and I were stunned to learn that Solid State Scientific Corp. had a license to practice this invention. AFRL made a contractual commitment to revoke Solid State's License. On September 5, 2000, the exclusive license for the above-mentioned patents was signed. One of those patents No. 6,113,985 was issued on September 5, 2000, which triggered our exclusive licensing period. The other is still not issued and we do not know the reason for this delay.



FOR OFFICIAL USE ONLY
- not for public disclosure without the consent-

**PDR Background information submitted 4-18-2002**

The repeated attempts by the AFRL's legal department to revoke Solid State's license failed. Dr. Alexander complained that Solid State is subjected to undue pressure and stated that this company works for him defending their refusal to surrender the license. Solid State Scientific Corp. is an on site AFRL's service contractor. It is being paid to perform certain work on behalf of the AFRL. This company has an access to proprietary information of all other entities engaged in collaboration with AFRL. As such it has certain fiduciary duties to adhere to and should not be allowed to gain, the rights to work performed by others in collaboration with AFRL and then emerge as a potential competitor in the commercial marketplace. As far as we are concerned, it is a grave example of the conflict of interest, which AFRL is responsible for and has to correct immediately. Is Solid State a vehicle, a Trojan horse, used by Mr. Alexander and others involved, to misappropriate our and the US government's technology?

Since June 2000, I have joined forces with Mr. Chirvani Abdoullaev, who became an equal partner of the PDR, Inc. Mr. Abdoullaev concentrated his efforts on raising venture capital to finance commercialization effort of the technology in question. A number of venture capital firms were approached; a numerous presentations were conducted.

In October 2000, Mr. Abdoullaev called Mr. Drehman to discuss results of his work on sputtering depositions using my targets. Among other things, Mr. Drehman stated the following:

- The GaN targets were contaminated and deposition results were unsatisfactory.
- The AlN target depositions he is currently working on offer better results. He declined to elaborate on specifics stating his intention to file additional patents.
- Mr. Drehman also suggested that PDR's exclusive license wouldn't be renewed.
- He further advised against working with me implying I am not a trustworthy person to align anyone's business interests with.

These statements contradict Mr. Drayman's earlier results and information given to me and other people. The AlN target deposition was part of my CRADA agreement as evidenced from the presentation given by Mr. Drehman at the Air Force Headquarters. The last two comments clearly aimed at jeopardizing any commercialization effort on my part. Have any of the companies we have approached were scared of by such comments made by any of the AFRL's employees?

When I complained to the AFRL's legal team, without disclosing Mr. Drayman's name, they asked me if the person I was talking about was Mr. D. Bliss, as they were aware about Mr. Bliss's negative comments made about me elsewhere. I don't have to say what a negative comment of any sort would do when anyone is in a process of deciding to commit financial or other resources to our commercialization effort. Does it not implicitly understood, that any government agency involved in technology transfer has to assist the process with, among other things, promoting the technology to outsiders.



FOR OFFICIAL USE ONLY
- not for public disclosure without the consent-

**PDR Background information submitted 4-18-2002**

It is abundantly clear by now that issues presented are beyond any simple disagreements, which might have emerged from my CRADA agreements with AFRL. The issues are much more serious in nature and require thorough investigation. Violation of constitutional rights, conflict of interests, property theft, breach of contract, assassination of character, misrepresentation, illegal dealings, unfair competition, deliberate attempts to inflict harm and cover-up are within the scope of your organizations mandate. We ask for your involvement, as we are running out of options in trying to resolve these issues amicably and directly with AFRL. Our latest two requests to correct wrongdoing were ignored.

I was trying to give you a scope of the issues in a very compressed form. If you require any additional information or clarification, please do not hesitate to call me at 508-543-4052.

Thank you

Kenneth Preston

Kenneth Preston
PDR, Inc.



FOR OFFICIAL USE ONLY
- not for public disclosure without the consent-

**PDR Background information submitted 4-18-2002**



Sept 4, 2001

Attn: Julian Siegel Esq. Chief JAZ
ESC/JAZ
40 Wright Street
Bedford, MA 01731-2903

From: Ken Preston
PDR, Inc.
54 Adams Street
Foxboro, MA 02035

Subject: Your Failure to Respond to Our Offer to Resolve the Dispute

Dear Julian,

In 1998 AFRL/SNHX unilaterally stopped all work under the CRADA with the PDR Inc. The property of this corporation was unlawfully ceased and as a result PDR Inc. was unable to continue its work with other research and commercial partners as well.

On May 14, 1999 AFRL/SNHX and PDR Inc. signed a letter of intent to revive the CRADA and at least partially to repair the damage inflicted upon the company. This letter reflected an agreement reached in March of 1999. The revised CRADA agreement and later an exclusive license agreement were signed.

In these agreements AFRL accepted certain obligations toward PDR Inc., specifically:

- To provide relevant information to PDR Inc., related to work carried out under the CRADA
- To return PDR Inc.'s property
- To grant PDR Inc. an exclusive license to practice inventions made under CRADA.

AFRL deliberately failed to effectively fulfill its contractual obligations. AFRL abused its power, violated our constitutional rights and is liable for and not limited to:

- Undermining the integrity of the exclusive license
- Withholding of information including that, which would have directed our actions at relevant times.
- Transferring PDR Inc.'s proprietary information to commercial competitors
- Seizing of PDR Inc.'s property and technology
- Slandering of our technology, names and reputations

On October 23, 2000 we notified you about interference in our commercialization effort and infringement of our technology. Since you have failed to adequately respond and correct the wrongdoing by AFRL' employees, we will seek other venues to remedy this



FOR OFFICIAL USE ONLY
- not for public disclosure without the consent-

**PDR Background information submitted 4-18-2007**



situation. We would like to remind you that AFRL is required and obligated to cooperate with us in prosecuting the wrongdoers.

Finally, we would like to warn you about the importance of preserving the integrity of the file created by you, Mr. S. Collier and myself. This file was reviewed in the presents of Mr. Stoper and is referenced in or September 15, 2000 summary letter personnel presented and mailed to you.

Kenneth Preston

Kenneth Preston
PDR Inc.

Mailed Original



FOR OFFICIAL USE ONLY
- not for public disclosure without the consent-