IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PDR, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 03-2047C |
| v. | ) | |
| | ) | (Judge George Miller) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56(b) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests that the Court enter summary judgment in our favor because there are no genuine issues of material fact in this case and defendant is entitled to judgment as a matter of law. In support of our motion, we rely upon plaintiff's pleadings, our brief, and the accompanying Proposed Findings of Uncontroverted Fact.

I. The Nature Of This Case

This case is centered upon a Co-operative Research and Development Agreement ("the CRADA")[1], as amended, between plaintiff, PDR, Inc. ("PDR") and the United States Air Force ("the Air Force"). See Comp. 4.[2] PDR and the Air Force entered into the CRADA to develop Gallium Nitride ("GaN") "targets" to use as part of a process to create GaN films. DPFUF 1.[3]

As alleged by PDR's complaint, PDR and the Air Force had a contentious relationship at

---

[1] CRADAs are creatures of the Federal Technology Transfer Act. See 15 U.S.C. § 3710a.

[2] "Comp. __" refers to a paragraph of PDR's amended complaint.

[3] "DPFUF__" refers to our "Proposed Findings of Uncontroverted Fact," filed concurrently with this motion.

times. See generally Comp. 8-67. PDR's complaint contends that the Air Force breached the contract of the CRADA in the following seven ways: (1) refusing to share the results of its analysis of two GaN targets that PDR had provided it, Comp. 69; (2) failing to grant PDR an exclusive license to technology developed pursuant to the CRADA, Comp. 70; (3) locking PDR out of laboratory and research facilities at Hanscom Air Force Base ("AFB"), Comp. 71; (4) filing patents without including PDR's principal (Mr. Preston) as a co-inventor, Comp. 72; (5) disclosing proprietary PDR information to other commercial entities in a non-confidential manner, Comp. 73; (6) interfering with PDR's commercialization efforts of technology created under the CRADA, Comp. 74; and (7) interfering with PDR's relationship with its subcontractors by seizing their equipment. Comp. 75. Count III of PDR's complaint, also alleging breach of contract through withholding of data regarding the GaN targets, appears to be repeating an allegation made earlier in PDR's complaint. Compare Comp. 69 to Comp. 80.

In addition to alleging that the Government had breached the contract of the CRADA (as amended), PDR also alleged that "locking [PDR] out of Hanscom Air Force Base laboratory," seizing its equipment, and violating the CRADA constituted a Fifth Amendment taking. Comp. 78.

Finally, PDR alleges that the Air Force misappropriated its technology by obtaining patents of its own, which "mirrored" PDR's technology and, thus, the Air Force owes PDR payment under the principle of quantum meruit. Comp. 83 - 84.

## II. Statement Of Facts

We respectfully refer the Court to the accompanying Proposed Findings of Uncontroverted Fact.

## LAW AND ARGUMENT

PDR's complaint should be dismissed and judgment entered for the United States because the CRADA contains a dispute resolution mechanism with which PDR has not complied, thereby compelling dismissal of the claim for failure to exhaust administrative remedies. Moreover, the second amendment to the CRADA acted as an accord and satisfaction to PDR's claims that it was wronged by "dispute(s) . . . [that] effectively terminated [the CRADA]," i.e., PDR's allegations regarding the Air Force "locking [PDR] out" of Hanscom AFB and seizing its intellectual property as well as all other components of its claims which pre-dated that signing of the amendment in August, 1999. Finally, the undisputed expert testimony demonstrates that the PDR technology that it alleges was wrongfully appropriated by the Air Force was either not new to the Air Force or never used by the Air Force, thus this allegation cannot support the fifth component of PDR's breach of contract claim (see Comp. 72) or the fourth count of PDR's complaint, alleging quantum meruit.

### I. Standards For Summary Judgment

The familiar standards of summary judgment need only a brief re-statement here. The procedure of summary judgment is properly regarded not as a disfavored shortcut, but rather as an integral part of the Court rules as a whole, designed to secure a just, speedy and inexpensive determination of every action. Spirit Leveling Contractors v. United States, 19 Cl. Ct. 84, 89 (1989)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)); accord Sweats Fashions, Inc. v. Pannill Knitting, Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987). "The focus in determining whether summary judgment is appropriate is the lack of disputed material facts. A material fact has been defined as a fact that will make a difference in the outcome of a case." Curtis v. United

States, 144 Ct. Cl. 194, 199, 168 F. Supp. 213, 216 (1958), cert. denied 361 U.S. 843 (1959). Stated differently, only disputes over facts that might affect the outcome of a suit will properly prevent an entry of judgment. Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).

## II. PDR Is Precluded From Bringing This Suit By Its Failure To Exhaust The Administrative Remedies Embodied In The CRADA's Dispute Resolution Clause

The CRADA included a disputes resolution clause vesting complete authority for resolution of disputes "arising out of, or related to" the CRADA to the a "reviewing official, whose decisions were final and subject only to appeal to the Secretary of the Air Force (or his designee)" whose decisions were "final and conclusive." App. 5.[4] Such a clause operates to require the exhaustion of administrative remedies prior to pursuit of judicial remedies. Because PDR did not exhaust its remedies here, the Court should dismiss this case.

### A. The CRADA Included An Exclusive Disputes Resolution Clause

The portion of the CRADA addressing the resolution of disputes is plain, and we reproduce it, in whole, here:

> 8.4 Disputes. All disputes arising out of, or related to, this AGREEMENT shall be resolved in accordance with this Article.
>
> 8.4.1 The Parties shall attempt to resolve disputes between themselves. Any dispute which is not disposed of by agreement of the Parties shall be referred to the REVIEWING OFFICIAL for decision.
>
> 8.4.2 REVIEWING OFFICIAL. The REVIEWING OFFICIAL shall within sixty (60) days of the receipt of the dispute notify the Parties of the decision. This decision shall be final and conclusive unless, within thirty (30) days from the date of receipt of such copy, either Party submits to the REVIEWING OFFICIAL, a written appeal addressed to the Secretary of the Air Force.

[4] "App. __" refers to a page of the appendix following our "Proposed Findings of Uncontroverted Fact," submitted today.

> 8.4.3 Secretary of the Air Force. The decision of the Secretary of the Air Force, or his duly authorized representative, on the appeal shall be final and conclusive.

App. 5.

B. The CRADA's Dispute Resolution Clause Precludes Judicial Review Prior To Administrative Exhaustion

It is well-established that, in contracts not covered by the Contract Disputes Act, 41 U.S.C. §§ 601-603 ("CDA")[5], a disputes clause requiring a specific remedy for a dispute compels recourse to that remedial system prior to a plaintiff's seeking redress in court. Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336, 1340-41 (Fed. Cir. 2000) (citing numerous cases); see also Crown Coat Front Co. v. United States, 386 U.S. 503, 512 (1967) ("It is now crystal clear that the contractor must seek the relief provided for under the contract or be barred from any relief in the courts"). In United States v. Joseph A. Holpuch Co., 328 U.S. 234 (1946), the Supreme Court reviewed a contract disputes clause almost identical to the one presented here (disputes to be decided by contracting officer, with written appeal, within 30 days, to the head of the department or his representative, whose decision was final and conclusive, see 238 U.S. at 236) and concluded that:

> [I]n the absence of some clear evidence that the appeal procedure is inadequate or unavailable, that procedure must be pursued and exhausted before a contractor can be heard to complain in a court.

328 U.S. at 239.

---

[5] A CRADA is not a CDA contract. Chem Service, Inc. v. Environmental Monitoring Systems Laboratory, Cincinnati of U.S. E.P.A., 12 F.3d 1256, 1258 (3rd Cir. 1993) (CRADA not a procurement contract).

C. PDR Did Not Exhaust Its Administrative Remedies Under The CRADA

The evidence is plain that though PDR's principal, Mr. Preston, complained a great deal to Air Force representatives (perhaps pursuant to section 8.4.1 of the CRADA, requiring parties to attempt informal resolution of disputes), he never actually submitted the complaints brought in this complaint to the Reviewing Official for his decision. Moreover, although Mr. Preston did write a letter to the Secretary of the Air Force ("the Secretary"), complaining of his problems with the CRADA, he did not actually appeal any decision of the Reviewing Official to the Secretary.

As PDR was informed, the Director of the Sensors Directorate was the CRADA's Reviewing Official. DPFUF 7. Mr. McFawn held that position from October 1997 through September 1999 (id.) and Mr. Hanson held that position from September 1999 through May 2005. Id. Neither Mr. McFawn nor Mr. Hanson recall ever being requested to make a decision to resolve a dispute pursuant to Section 8.4 of the CRADA. DPFUF 8. Mr. Alexander, who supervised the scientists who worked with Mr. Preston until some time in 2000, and had reason to be informed of complaints submitted pursuant to Section 8.4 of the CRADA, saw no evidence of such a complaint. Id. Moreover, Mr. Rosengarten, who was the monitor of all CRADAs in the Sensors Directorate and maintained documentation of all correspondence from CRADAs through February 2001 has no recollection of any formal requests by PDR for dispute resolution by the Reviewing Official. Id. Mr. Rosengarten's files only contain two letters from Mr. Preston, which involved informal resolution of matters not related to this lawsuit. Id.

In addition to failing to seek resolution of any dispute through the Reviewing Official, PDR failed to make a timely appeal (or any appeal) to the Secretary as required by the CRADA.

While Mr. Preston did send a letter to the Secretary requesting an "investigation," see App. 39, this letter does not constitute a timely appeal of the Reviewing Official's decision, pursuant to Section 8.4.2 of the CRADA, because it was not submitted within 30 days of a particular decision by the Reviewing Official; it does not identify any decision which is being appealed; and was not submitted through the Reviewing Official. Instead, the letter makes generalized complaints about administration of the CRADA and seeks an "investigation" of matters and complains that information provided to Mr. Preston and the legal counsel at the Air Force Research Laboratory was "willfully distorted." See App. 39-44. Little wonder that the Secretary treated the letter as a request for an Inspector General's investigation and proceeded to take just that course of action, rather than considering it to be an appeal of a Reviewing Official's decision. See DPFUF 10 (Secretary forwarded Mr. Preston's letter to the Inspector General's office).

Accordingly, because PDR did not utilize the dispute resolution mechanisms clearly set forth in the CRADA, it did not exhaust its administrative remedies. Thus, PDR's claims, all "arising out of or related to" the CRADA and, thus, within its dispute resolution mechanism, App. 5, must be dismissed. Holpuch, 328 U.S. at 239.

## III. PDR Is Precluded From Bringing Claims Related To Disputes That Occurred Prior To Amendment 2 To The CRADA Because That Amendment Acted As An Accord & Satisfaction To Those Disputes

As demonstrated by the language of Amendment 2 to the CRADA, the parties recognized that their relationship had devolved, and they agreed to that amendment to "resolve" their disputes. This amendment, signed by both parties, acted as an accord and satisfaction to pre-

existing disputes, such as PDR's claim that it was "lock[ed] out" of its laboratory on Hanscom AFB.

A. <u>An Accord And Satisfaction Is A Perfect Defense</u>

An accord and satisfaction terminates an otherwise existing right and constitutes a "perfect defense in an action for the enforcement of a previous claim, whether that claim was well founded or not:"

> An "accord" is "an agreement by one party to give or perform and by the other party to accept, in settlement or satisfaction of an existing or matured claim, something other than that which is claimed to be due." "Satisfaction" means "the execution or performance of the agreement, of the actual giving and taking of some agreed thing."

<u>Chesapeake & Potomac Tel. Co. v. United States</u>, 654 F.2d 711, 716 (Ct. Cl. 1981) (quoting 1 Am. Jur. 2d <u>Accord and Satisfaction</u> § 1 (1962)). To be binding as an accord, the agreement must provide that the offered performance is in full satisfaction of the claim:

> "The process of making an accord . . . is the same as in the case of other contracts."
>
> . . . "There must be accompanying expressions sufficient to make the creditor understand, or to make it unreasonable for him not to understand, that the performance is offered to him as full satisfaction of his claim and not otherwise. If not so rendered, there is no accord, either executory or executed, for the reason that there are no operative expressions of agreement -- no sufficient offer and acceptance."

654 F.2d at 716 (quoting 6 A. Corbin, <u>Corbin on Contracts</u> § 1276 (1962)).

B. Amendment 2 To The CRADA Included An Accord And Satisfaction Relating To The Disputes That Preceded That Amendment

Paragraph 7 of Amendment 2 to the CRADA provides:

> In Article 8.1, add new paragraph 8.1.1 as follows:
>
> 8.1.1 A first amendment extended the CRADA for 30 months until 22 November 1998. As a result of a dispute(s), work was effectively terminated before this date. This revival of the CRADA implements the resolution of that dispute. The CRADA shall be extended for a six month period commencing on the signing of this amendment by the reviewing official.

DPFUF 5. Mr. Preston signed for PDR on August 31, 1999. Id. Mr. McFawn, the Reviewing Official, signed Amendment 2 to the CRADA on September 24, 1999. Id.

By its terms, the second amendment to the CRADA is an accord and satisfaction of the pre-existing dispute between PDR and the Air Force. First, it identifies the dispute resolved: namely, the dispute(s) which "effectively terminated" performance of the CRADA before the end of the performance period. Second, the amendment makes clear that it "implements the resolution of that dispute," DPFUF 5, which satisfies that requirement from Chesapeake & Potomac Tel. Co. that the document include, "accompanying expressions sufficient to make the creditor understand, or to make it unreasonable for him not to understand, that the performance is offered to him as full satisfaction of his claim and not otherwise." 654 F.2d at 716. Thus, the disputes preceding Amendment 2 to the CRADA should be eliminated from PDR's complaint as having been settled by an accord and satisfaction.

IV. No Air Force Patents "Mirrored" Technology Provided To It By PDR

The fourth count of PDR's complaint, "Quantum Meruit," alleges that the Air Force misappropriated the intellectual property of PDR by obtaining patents which "mirrored" PDR's

technology. Comp. 84. A similar allegation is included in PDR's assertion that the Air Force breached the CRADA, in part, by not giving Mr. Preston appropriate recognition in certain patents. See Comp. 72. The undisputed evidence demonstrates that the Air Force patents in question received no contribution from PDR technology.

Although the four Air Force patents that PDR alleges were influenced by PDR technology are all related to different means of creating GaN crystals, DPFUF 13, they used no technology or ideas newly provided by PDR. The "new technology," that PDR alleges was misappropriated in these patents, had two major components: first, the use of ammonium salts in the creation of GaN crystals; second, the use of "hot pressing" to create a GaN "target." DPFUF 12. Neither component of PDR's "new" technology was newly used by the Air Force. Regarding the first component, it is uncontroverted that the Air Force had an extensive program for the use of ammonium salts in the creation of GaN targets pre-dating PDR's involvement with the Air Force. Id. Regarding the second component, the Air Force patents did not utilize the hot pressing method in any way, whatsoever. Thus, the four Air Force patents at issue in this section of PDR's complaint were demonstrably not based upon PDR's technology and cannot be said to "mirror" it. Accordingly, these sections of PDR's complaint must be dismissed.

## CONCLUSION

Accordingly, for these reasons, we respectfully request that the Court issue summary judgment in favor of the Government.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

s/J. Reid Prouty
J. REID PROUTY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 305–7586
Fax: (202) 514-7969

March 9, 2007