# USAF CRDA NUMBER 96-RL-07

## USAF COOPERATIVE RESEARCH AND DEVELOPMENT AGREEMENT

## BETWEEN

## ROME LABORATORY

## AND

## PDR, INC.

### Article 1. Preamble

1.1 This Cooperative Research and Development Agreement (AGREEMENT) for performing the work described in the Work Plan attached hereto as Appendix A is entered into pursuant to 15 U.S.C. § 3710a (as amended) and Air Force Policy Directive 61-3 by and between PDR, Inc., (hereinafter referred to as "PDR, Inc."), located at 54 Adams Street, Foxboro, MA 02035, and the United States of America as represented by the Department of the Air Force, Rome Laboratory, (hereinafter referred to as "RL"), located at Rome, New York. The terms and conditions of this AGREEMENT are set forth as follows.

### Article 2. Definitions

2.1 As used in this AGREEMENT, the following terms shall have the following meanings and such meanings shall be applicable to both the singular and plural forms of the terms:

2.2 "CREATED" in relation to any copyrightable work means when the work is fixed in any tangible medium of expression for the first time, as provided for at 17 U.S.C. § 101.

2.3 "EFFECTIVE DATE" means the earlier of: (a) the date of the last signature of the duly authorized representatives of the Parties and the REVIEWING OFFICIAL; or (b) thirty (30) days after the receipt of a signed copy of this AGREEMENT by the REVIEWING OFFICIAL without that official taking any action thereon.

2.4 "GOVERNMENT" means the Government of the United States of America.

2.5 "GOVERNMENT PURPOSE LICENSE" or "GPL" means a license to the GOVERNMENT conveying a nonexclusive, irrevocable, worldwide, royalty-free license to practice and have practiced an INVENTION for or on behalf of the GOVERNMENT for government purposes and on behalf of any foreign government or international organization pursuant to any existing or future treaty or agreement with the United States, and conveying the right to use, duplicate or disclose copyrighted works or PROPRIETARY INFORMATION in whole or in part and in any manner, and to have or permit others to do so, for government purposes. Government purposes include competitive procurement, but do not include the right to have or permit others to practice an INVENTION or use, duplicate or disclose copyrighted works or PROPRIETARY INFORMATION for commercial purposes.

2.6 "INVENTION" means any invention or discovery which is or may be patentable or otherwise protected under Title 35 of the United States Code or any novel variety of plant

which is or may be protectable under the Plant Variety Protection Act (7 U.S.C. § 7321 et seq.).

2.7 "MADE" in relation to any INVENTION means the conception or first actual reduction to practice of such INVENTION.

2.8 "PROPRIETARY INFORMATION" means information which embodies trade secrets or which is confidential technical, business or financial information provided that such information:

i) is not generally known, or is not available from other sources without obligations concerning its confidentiality;
ii) has not been made available by the owners to others without obligation concerning its confidentiality;
iii) is not described in an issued patent or a published copyrighted work or is not otherwise available to the public without obligation concerning its confidentiality; or
iv) can be withheld from disclosure under 15 U.S.C. § 3710a(c)(7)(A) & (B) and the Freedom of Information Act, 5 U.S.C. § 552 et seq; and
v) is identified as such by labels or markings designating the information as proprietary.

2.9 "REVIEWING OFFICIAL" means the authorized representative of the Department of the Air Force who is identified on the signature page of this AGREEMENT.

2.10 "UNDER" as used in the phrase "UNDER this AGREEMENT" means within the scope of work performed under this AGREEMENT.

## Article 3. Work Plan

3.1 The nature and scope of the work performed UNDER this AGREEMENT, including any equipment, maintenance and other support, and any associated reporting requirements are set forth in Appendix A.

3.2 PDR INC. may inspect GOVERNMENT property identified in Appendix A prior to use. Such property may be repaired or modified at PDR Inc.'s expense only after obtaining the written approval of RL. Any repair or modification of the property shall not affect the title of the GOVERNMENT. Unless RL hereafter otherwise agrees, PDR Inc. shall, at no expense to RL, return all GOVERNMENT property after termination or expiration of this AGREEMENT in the condition in which it was received, normal wear and tear excepted.

3.3 The Parties agree to confer and consult with each other prior to publication or other public disclosure of the results of work UNDER this AGREEMENT to ensure that no PROPRIETARY INFORMATION or military critical technology or other controlled information is released. Prior to submitting a manuscript for publication or before any other public disclosure, each Party will offer the other Party ample opportunity to review such proposed publication or disclosure, to submit objections, and to file applications for letters patent in a timely manner.

## Article 4. Financial Obligations

4.1 Payments from copyrights shall be payable by PDR Inc. to RL in accordance with the provisions of Article 6.

4.2 Except as provided for in paragraph 4.4, payments by PDR Inc. to RL under this Article shall be made payable to RL and mailed to the following address:

RL/FM
26 Electronic Pky
Rome NY 13441-4514

4.3 Royalty or other income from patents shall be payable in accordance with any patent license under Article 5.

## Article 5. Patents

5.1 Disclosure of INVENTIONS. Each Party shall report to the other Party, in writing, each INVENTION MADE UNDER this AGREEMENT, promptly after the existence of each such INVENTION, in the exercise of reasonable diligence, becomes known.

5.2 Rights in INVENTIONS. Each Party shall separately own any INVENTION MADE solely by its respective employees UNDER this AGREEMENT. INVENTIONS MADE jointly by RL and PDR Inc. employees shall be jointly owned by both Parties. PDR Inc. shall have an option under 15 U.S.C. § 3710a(b)(2) to obtain an exclusive or non-exclusive license at a reasonable royalty rate, subject to the retention of a GPL by the GOVERNMENT, in any INVENTION MADE by RL employees UNDER this AGREEMENT. PDR Inc. shall exercise the option to obtain a license by giving written notice thereof to RL within three (3) months after disclosure of the INVENTION under paragraph 5.1. The royalty rate and other terms and conditions of the license shall be set forth in a separate license agreement and shall be negotiated promptly after notice is given. PDR Inc. hereby grants to the GOVERNMENT, in advance, a GPL in any INVENTION MADE by PDR Inc. employees UNDER this AGREEMENT.

5.3 Filing Patent Applications. PDR Inc. shall have the first option to file a patent application on any JOINT INVENTION MADE UNDER this AGREEMENT, which option shall be exercised by giving notice in writing to RL within three (3) months after disclosure of the INVENTION under paragraph 5.1, and by filing a patent application in the U.S. Patent and Trademark Office within six (6) months after written notice is given. If PDR Inc. elects not to file or not to continue prosecution of a patent application on any such INVENTION in any country or countries, PDR Inc. shall notify RL thereof at least three (3) months prior to the expiration of any applicable filing or response deadline, priority period or statutory bar date. In any country in which PDR Inc. does not file, or does not continue prosecution of, or make any required payment on, an application on any such INVENTION, RL may file, or continue prosecution of, or make any required payment on, an application, and PDR Inc. agrees, upon request by RL, to assign to the GOVERNMENT all right, title and interest of PDR Inc. in any such application and to cooperate with RL in executing all necessary documents and obtaining cooperation of its employees in executing such documents related to such application. The Party filing an application shall provide a copy thereof to the other Party.

Any patent application filed on any INVENTION MADE UNDER this AGREEMENT shall include in the patent specification thereof the statement: "This invention was made in the performance of a cooperative research and development agreement with the Department of the Air Force. The invention may be manufactured and used by or for the Government of the United States for all government purposes without the payment of any royalty."

5.4 Patent Expenses. Unless otherwise agreed, the Party filing an application shall pay all patent application preparation and filing expenses and issuance, post issuance and patent maintenance fees associated with that application.

## Article 6. Copyrights

6.1 PDR Inc. shall own the copyright in all works CREATED in whole or in part by PDR Inc. UNDER this AGREEMENT, which are copyrightable under Title 17, United States Code. PDR Inc. shall mark any such works with a copyright notice showing PDR Inc. as an owner and shall have the option to register the copyright at PDR Inc.'s expense.

6.2 PDR Inc. hereby grants in advance to the GOVERNMENT a GPL in all copyrighted works CREATED UNDER this AGREEMENT. PDR Inc. will prominently mark each such copyrighted work subject to the GPL with the words: "This work was created in the performance of a cooperative research and development agreement with the Department of the Air Force. The Government of the United States has a royalty-free government purpose license to use, duplicate or disclose the work, in whole or in part and in any manner, and to have or permit others to do so, for government purposes."

6.3 PDR Inc. shall furnish to RL, at no cost to RL, three (3) copies of each work CREATED in whole or in part by PDR Inc. UNDER this AGREEMENT.

6.4 PDR Inc. shall pay to RL twenty percent (20%) of all gross income received by PDR Inc. or its affiliates from the sale, lease or rental of any copyrighted work CREATED UNDER this AGREEMENT. PDR Inc. shall pay to RL fifty percent (50%) of all gross royalties received by PDR Inc. or its affiliates from the licensing or assignment of any copyrighted work CREATED UNDER this AGREEMENT. Any sale, lease or rental to GOVERNMENT shall not be subject to payments hereunder and shall be discounted in price by a corresponding amount. All such payments to RL shall be due and paid on or before the last day of the month next following receipt by PDR Inc. of any such gross income or gross royalties. PDR Inc. shall provide to RL a report at least annually showing all gross income and royalties received. PDR Inc. shall make payments due hereunder to RL in accordance with paragraph 4.3 of this AGREEMENT. PDR Inc.'s obligation to make payments to RL hereunder shall survive expiration or other termination of this AGREEMENT.

6.5 RL, at its expense, may require an accounting of income received by PDR Inc. and its affiliates and may, at reasonable times and upon reasonable notice to PDR Inc., examine PDR Inc.'s and any affiliate's books and records to verify the accounting.

## Article 7. Proprietary Information

7.1 Neither Party to this AGREEMENT shall deliver to the other Party any PROPRIETARY INFORMATION not developed UNDER this AGREEMENT, except with the written consent of the receiving Party. Unless otherwise expressly provided in a separate document, such PROPRIETARY INFORMATION shall not be disclosed by the receiving Party except under a written agreement of confidentiality to employees and contractors of the receiving Party who have a need for the information in connection with their duties UNDER this AGREEMENT.

7.2 PROPRIETARY INFORMATION developed UNDER this AGREEMENT shall be owned by the developing Party, and any jointly developed PROPRIETARY INFORMATION shall be jointly owned. GOVERNMENT shall have a GPL to use, duplicate and disclose, in confidence, and to authorize others to use, duplicate and disclose, in confidence, for

government purposes, any such PROPRIETARY INFORMATION developed solely by PDR Inc.. PDR Inc. may use, duplicate and disclose, in confidence, and authorize others on its behalf to use, duplicate and disclose, in confidence, any such PROPRIETARY INFORMATION developed solely by RL. PROPRIETARY INFORMATION developed UNDER this AGREEMENT shall be exempt from the Freedom of Information Act, 5 U.S.C. § 552 et seq, as provided at 15 U.S.C. § 3710a(c)(7)(A) & (B). The exemption for PROPRIETARY INFORMATION developed jointly by the Parties or solely by RL shall expire not later than five years from the date of development of such PROPRIETARY INFORMATION.

**Article 8. Term, Extension, Modification, Termination and Disputes**

8.1 Term and Extension. The term of this AGREEMENT is for a period of twelve (12) months, commencing on the EFFECTIVE DATE of this AGREEMENT. This AGREEMENT shall expire at the end of this term unless both Parties hereto agree in writing to extend it further. Expiration of this AGREEMENT shall not affect the rights and obligations of the Parties accrued prior to expiration.

8.2 Modification. Any modifications shall be by mutual written agreement signed by the Parties' representatives authorized to execute this AGREEMENT and attached hereto. A copy of any modifications will be forwarded to the REVIEWING OFFICIAL for information purposes.

8.3 Termination. Either Party may terminate this AGREEMENT for any reason upon delivery of written notice to the other Party at least three (3) months prior to such termination. Termination of this AGREEMENT shall not affect the rights and obligations of the Parties accrued prior to the date of termination of this AGREEMENT. In the event of termination by either Party, each Party shall be responsible for its own costs incurred through the date of termination, as well as its own costs incurred after the date of termination and which are related to the termination. If RL terminates this AGREEMENT, it shall not be liable to PDR Inc. or its contractors or subcontractors for any costs resulting from or related to the termination, including, but not limited to, consequential damages or any other costs.

8.4 Disputes. All disputes arising out of, or related to, this AGREEMENT shall be resolved in accordance with this Article.

8.4.1 The Parties shall attempt to resolve disputes between themselves. Any dispute which is not disposed of by agreement of the Parties shall be referred to the REVIEWING OFFICIAL for decision.

8.4.2 REVIEWING OFFICIAL. The REVIEWING OFFICIAL shall within sixty (60) days of the receipt of the dispute, notify the Parties of the decision. This decision shall be final and conclusive unless, within thirty (30) days from the date of receipt of such copy, either Party submits to the REVIEWING OFFICIAL, a written appeal addressed to the Secretary of the Air Force.

8.4.3 Secretary of the Air Force. The decision of the Secretary of the Air Force, or his duly authorized representative, on the appeal shall be final and conclusive.

8.5 Continuation of Work. Pending the resolution of any such dispute, work under this AGREEMENT will continue as elsewhere provided herein.

## Article 9. Representations and Warranties

9.1 RL hereby represents and warrants to PDR Inc. as follows:

9.1.1 Mission. The performance of the activities specified by this AGREEMENT are consistent with the mission of RL.

9.1.2 Authority. All prior reviews and approvals required by regulations or law have been obtained by RL prior to the execution of the AGREEMENT. The RL official executing this AGREEMENT has the requisite authority to do so.

9.1.3 Statutory Compliance. RL, prior to entering into this AGREEMENT, has (1) given special consideration to entering into cooperative research and development agreements with small business firms and consortia involving small business firms; (2) given preference to business units located in the United States which agree that products embodying an INVENTION MADE under this AGREEMENT or produced through the use of such INVENTION will be manufactured substantially in the United States; and (3) taken into consideration, in the event this AGREEMENT is made with an industrial organization or other person subject to the control of a foreign company or government, whether or not such foreign government permits United States agencies, organizations, or other persons to enter into cooperative research and development agreements and licensing agreements with such foreign country.

9.2 PDR Inc. hereby represents and warrants to RL as follows:

9.2.1 Corporate Organization. PDR Inc., as of the date hereof, is a corporation duly organized, validly existing and in good standing under the laws of the State of MA.

9.2.2 Statement of Ownership. PDR Inc. is not a foreign owned or a subsidiary of a foreign-owned entity. PDR Inc. has the right to assignment of all INVENTIONS MADE and copyrightable works CREATED by its employees UNDER this AGREEMENT.

9.2.3 Authority. The PDR Inc. official executing this AGREEMENT has the requisite authority to enter into this AGREEMENT and PDR Inc. is authorized to perform according to the terms thereof.

## Article 10. Liability

10.1 Property. All property is to be furnished "as is." No Party to this AGREEMENT shall be liable to any other Party for any property of that other Party consumed, damaged or destroyed in the performance of this AGREEMENT, unless it is due to the gross negligence or willful misconduct of the Party or an employee or agent of the Party.

10.2 PDR Inc. Employees. PDR Inc. agrees to indemnify and hold harmless and defend the GOVERNMENT, its employees and agents, against any liability or loss for any claim made by an employee or agent of PDR Inc., or persons claiming through them, for death, injury, loss or damage to their person or property arising in connection with this AGREEMENT, except to the extent that such death, injury, loss or damage arises solely from the negligence of RL or its employees.

10.3 **NO WARRANTY**. EXCEPT AS SPECIFICALLY STATED IN ARTICLE 9, OR IN A LATER AGREEMENT, THE PARTIES MAKE NO EXPRESS OR IMPLIED

WARRANTY AS TO ANY MATTER WHATSOEVER, INCLUDING THE CONDITIONS OF THE RESEARCH OR ANY INVENTION OR PRODUCT, WHETHER TANGIBLE OR INTANGIBLE, MADE, OR DEVELOPED UNDER THIS AGREEMENT, OR THE MERCHANTABILITY, OR FITNESS FOR A PARTICULAR PURPOSE OF THE RESEARCH OR ANY INVENTION OR PRODUCT. THE PARTIES FURTHER MAKE NO WARRANTY THAT THE USE OF ANY INVENTION OR OTHER INTELLECTUAL PROPERTY OR PRODUCT CONTRIBUTED, MADE OR DEVELOPED UNDER THIS AGREEMENT WILL NOT INFRINGE ANY OTHER UNITED STATES OR FOREIGN PATENT OR OTHER INTELLECTUAL PROPERTY RIGHT. IN NO EVENT WILL ANY PARTY BE LIABLE TO ANY OTHER PARTY FOR COMPENSATORY, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES.

10.4 Other Liability. The GOVERNMENT shall not be liable to any other Party to this AGREEMENT, whether directly or by way of contribution or indemnity, for any claim made by any person or other entity for personal injury or death, or for property damage or loss, arising in any way from this AGREEMENT, including, but not limited to, the later use, sale or other disposition of research and technical developments, whether by resulting products or otherwise, whether made or developed UNDER this AGREEMENT, or whether contributed by either Party pursuant to this AGREEMENT, except as provided under the Federal Tort Claims Act (28 U.S.C. §§ 2671 et seq.) or other Federal law where sovereign immunity has been waived.

## Article 11. General Terms and Provisions

11.1 Disposal of Toxic or Other Waste. PDR Inc. shall be responsible for the removal and disposal from RL property of any and all toxic or other material provided or generated by PDR Inc. in the course of performing this AGREEMENT. PDR Inc. shall obtain at its own expense all necessary permits and licenses as required by local, state, and federal law and regulation and shall conduct such removal and disposal in a lawful and environmentally responsible manner.

11.2 Force Majeure. Neither Party shall be in breach of this AGREEMENT for any failure of performance caused by any event beyond its reasonable control and not caused by the fault or negligence of that Party. In the event such a force majeure event occurs, the Party unable to perform, shall promptly notify the other Party and shall in good faith maintain such part performance as is reasonably possible and shall resume full performance as soon as is reasonably possible.

11.3 Relationship of the Parties. The Parties to this AGREEMENT and their employees are independent contractors and are not agents of each other, joint venturers, partners or joint parties to a formal business organization of any kind. Neither Party is authorized or empowered to act on behalf of the other with regard to any contract, warranty or representation as to any matter, and neither Party will be bound by the acts or conduct of the other. Each Party will maintain sole and exclusive control over its own personnel and operations.

11.4 Publicity/Use of Name Endorsement. Any public announcement of this AGREEMENT shall be coordinated between PDR Inc., RL and the public affairs office supporting RL. PDR Inc. shall not use the name of RL or GOVERNMENT on any product or service which is directly or indirectly related to either this AGREEMENT or any patent license or assignment which implements this AGREEMENT without the prior written approval of RL. By entering into this AGREEMENT, RL or GOVERNMENT does not directly or indirectly endorse any product or service provided, or to be provided, by PDR Inc., its

successors, assignees, or licensees. PDR Inc. shall not in any way imply that this AGREEMENT is an endorsement of any such product or service.

11.5 No Benefits. No member of, or delegate to the United States Congress, or resident commissioner, shall be admitted to any share or part of this AGREEMENT, nor to any benefit that may arise therefrom; but this provision shall not be construed to extend to this AGREEMENT if made with a corporation for its general benefit.

11.6 Governing Law. The construction, validity, performance and effect of this AGREEMENT for all purposes shall be governed by the laws applicable to the GOVERNMENT.

11.7 Waiver of Rights. Any waiver shall be in writing and provided to all other Parties. Failure to insist upon strict performance of any of the terms and conditions hereof, or failure or delay in exercising any rights provided herein or by law, shall not be deemed a waiver of any rights of any Party hereto.

11.8 Severability. The illegality or invalidity of any provisions of this AGREEMENT shall not impair, affect or invalidate the other provisions of this AGREEMENT.

11.9 Assignment. Neither this AGREEMENT nor any rights or obligations of any Party hereunder shall be assigned or otherwise transferred by any Party without the prior written consent of all other Parties.

11.10 Controlled Information. The Parties understand that information and materials provided pursuant to or resulting from this AGREEMENT may be export controlled, classified, or unclassified sensitive and protected by law, executive order or regulation. Nothing in this AGREEMENT shall be construed to permit any disclosure in violation of those restrictions.

## Article 12. Notices

12.1 Notices, communications, and payments hereunder shall be deemed made if given and addressed as set forth below.

A. Formal notices under this AGREEMENT shall be sent by prepaid certified U.S. Mail and addressed as follows:

RL:
Attn: Joe Turczyn
RL/XP-TTO
Technology Transfer Office
26 Electronic Pky
Rome NY 13441-4514
PH: 315-330-1905
FAX: 315-330-7043

PDR Inc.:
Attn: Kenneth Preston
PDR, Inc.
54 Adams St.
Foxboro, MA 02035
PH: (508) 543-4052
FAX: (508) 543-4052

B. Correspondence relating to technical matters should be sent by prepaid ordinary U.S. Mail and addressed as follows:

RL: Attn: Michael Suscavage
RL/ERX
80 Scott Rd
Hanscom AFB, MA 01731-2909
PH: (617)377-5252 DSN: 478-5252
FAX: (617)377-6948

PDR Inc.: Attn: Kenneth Preston
PDR, Inc.
54 Adams St.
Foxboro, MA 02035
PH: (508) 543-4052
FAX: (508) 543-4052

IN WITNESS WHEREOF, the Parties have caused this AGREEMENT to be executed in duplicate by their duly authorized representatives as follows:

PDR Inc.:

By: Kenneth Preston
(Signature)

Name: Kenneth Preston

Title: President / PDR Inc

Date: 22 April 96

ROME LABORATORY:

By: Robert V. McGahan
(Signature)

Name: Robert V. McGahan

Title: Director, RL/ER

Date: 29 April 96

Air Force U.S. Government Reviewing Official:

By: Raymond P. Urtz
(Signature)

Name: Raymond P. Urtz

Title: Deputy Director Rome Laboratory

Date: 22 May 1996

# APPENDIX A

## Work Plan

Feasibility Of Wide Bandgap Nitride Semiconductor Targets
Made By Plasma Spray Process

### 1.0 BACKGROUND

There is a demand in the military and commercial markets for many types of wide bandgap semi-conductor materials for optical and electronic applications. An important class of wide bandgap semiconductors is the group III nitrides. One of these nitride compositions is gallium nitride (GaN). This material is being used to develop blue light emitting devices such as diodes and solid state lasers. This material is costly to manufacture and is currently limited in supply and material quality. Powdered GaN sells for $24 to $25 dollars per gram. The cost and supply are two factors that limit the amount of research that can be done in this critical technology area. RL is interested in obtaining GaN in bulk powder form and as solid, dense targets for use in a laser evaporation system used to deposit thin films. The primary objective of this CRDA is to examine a unique method of fabricating selected nitride compositions in powder form, as well as in dense solid pieces, while lowering costs. The initial investigation will focus on gallium nitride.

### 2.0 OBJECTIVE

PDR Inc. has worked for a number of years in the field of materials research and technology applications. A developing area of interest is wide bandgap semiconductors. Development of powders and sputtering targets will assist current research projects that are limited by the cost and availability of GaN. PDR Inc. and RL will collaborate to fill this need. Our initial work will be on the fabrication of GaN as sputtering targets. This material is used in blue light emitting diodes and also has application in blue light detectors and high operating temperature semiconductor devices. GaN in powder form is impure and costly to manufacture and GaN sputtering targets are not available. Reducing the cost and developing a source of supply are major the objectives in this CRDA.

It is known that GaN cannot be melted at atmospheric pressure. Presently, bulk GaN powder is synthesized by slowly reacting liquid gallium metal in a boat with ammonia at high temperature. The process is slow and the product is usually contaminated with oxygen and carbon from the boat. In most nitride development efforts, GaN is deposited as thin films onto substrates using metalorganic chemical vapor deposition (MOCVD) or molecular beam epitaxy (MBE). Laser evaporation is another thin film deposition method that may allow GaN to be deposited onto zinc oxide substrates. This technique requires a solid, dense target of the material to be deposited. However, GaN targets are not commercially available. Recent work has shown that there is a possibility that GaN can be deposited as a thick target through the use of a plasma spray gun. If the work on fabrication of a target and the resulting film that is deposited from the target is successful, this may lead to a commercial process for producing targets for other deposition techniques. To complete this work, PDR Inc. and RL will work together to fabricate, characterize, and test the applicability of such targets to deposit thin films of GaN

### 3.0 TECHNICAL TASKS

3.1 Task 1 - Technology Investigation

3.1.1 Both PDR Inc. and RL will jointly conduct a technical literature search to determine the existing abrication methods of the selected wide bandgap semiconductor materials with the initial one being GaN. PDR Inc. requests the services of DTIC for the length of the CRDA and will pay for such service. The effort will examine fabrication technologies currently used by sputtering target manufacturers. This information will be needed to determine the most expedient route to target

fabrication before funds are expended in areas that may have already been proven to be unsuccessful.

3.2 Task 2 - Preliminary Design and Requirements Review

3.2.1 Fixture design will be conducted by PDR Inc.. RL will provide the backing plates needed to interface to their thin film deposition equipment.

3.2.2 PDR Inc. and RL will conduct an interim review prior to target fabrication to make any changes in procedures and component designs.

3.3 Task 3 - Component and Fixture Fabrication

3.3.1 RL will fabricate and supply the backing plates and fixtures needed to support the GaN in the sputtering and laser evaporation systems. RL will also supply the high purity GaN powder and gallium metal for the experiments.

3.4 Task 4 - Plasma Spray Targets

3.4.1 PDR Inc. will provide personnel to set up a plasma spray station at RL using an RL megahertz radio frequency generator and attempt to plasma spray the commercial GaN powder onto the backing plates used in the laser evaporation and sputtering systems. In addition, PDR Inc. will attempt to synthesize GaN powder by reacting gallium with nitrogen in the plasma spray gun. This can either be deposited on a backing plate or collected as a powder.

3.5 Task 5 - Pre-Testing and Characterization

3.5.1 RL will characterize the targets by x-ray diffraction and energy dispersive spectroscopy to identify the material composition and determine foreign material or impurities in the targets.

3.6 Task 6 - Interim Report

3.6.1 PDR Inc. and RL will jointly report on the effort to plasma spray GaN targets and document the results obtained from any characterization performed on the targets at the six month point in the CRDA.

3.7 Task 7 - Thin Film Deposition of GaN

3.7.1 RL will sputter and laser evaporate the GaN target sample onto the appropriate substrate.

3.8 Task 8 - Post Testing and Characterization

3.8.1 RL will test and characterize the deposited film. This characterization will include stoichiometry, impurity concentration, and film orientation.

3.9 Task 9 - Final Report

3.9.1 PDR Inc. and RL will document the work conducted on this project in a final report created jointly by PDR Inc. and RL.

**4.0 DELIVERABLES AND DESIRED BENEFITS**

4.1 Deliverables

4.1.1 PDR Inc.

4.1.1.1 PDR Inc. will complete the "Customer Questionnaire" provided in Appendix B to the CRDA. This questionnaire will be completed within thirty (30) days of completion of work under this CRDA, and sent to RL in accordance with Article 12.1.A of this CRDA

4.1.1.2 PDR Inc. will attempt to plasma spray GaN powder onto a backing plate. Both the GaN powder and copper backing plates will be provided by RL. If the spraying of GaN is successful, PDR Inc. will spray deposit five laser evaporation and two sputtering targets and provide them to RL for characterization and testing. Initial targets will be thin to validate that the material is the correct composition with low impurity content. PDR Inc. will also design a fixture assembly for plasma spraying gallium metal with the nitrogen plasma spray gun in an attempt to form GaN. If successful, both the GaN targets and powder could become commercial products.

4.1.1.3 Interim and final reports

4.1.2 RL

4.1.2.1 RL currently has a program to develop wide bandgap nitride semiconductors in both bulk and thin film form. Bulk powdered GaN is costly due to the time consuming preparation procedure. Bulk solid GaN in the form of sputtering targets is not available due to the difficulty in sintering or consolidating the material into a dense piece. In order to carry out the bulk crystal growth program, RL will need a less costly source of GaN powder as a starting material. If the reaction of gallium metal with nitrogen in the plasma spray gun is successful, this could be an alternate source for the GaN powder. RL is also interested in thin film deposition and characterization of GaN. However, there are no commercial suppliers of GaN sputtering targets. Success in plasma spraying a thick GaN layer onto a backing plate will provide RL a source for these targets. The technique of plasma spraying has been used to deposit many refractory metals and oxides onto mandrels to form intricate shapes for the aerospace industry so this may have a fairly good chance of success in depositing targets.

4.1.2.2 Interim and final reports

4.2 Benefits

4.2.1 Benefits to PDR Inc.

4.2.1.1 Presently, the nature of business in the commercial and government world require that product demonstrations be conducted before concept designs are considered for broad development. PDR Inc. is linking up with RL through this CRDA to advance an idea from concept to commercialization. PDR Inc. does not have the resources to characterize GaN targets made by plasma spray deposition. The collaboration with RL will provide this ability. In addition, it is also necessary to test the target by using it to deposit thin films of GaN and to characterize the optical and electronic properties of these films. PDR Inc. does not have thin film deposition equipment, but the collaboration with RL provides a means to accomplish this task, especially since RL has an interest in wide bandgap semiconductors that includes nitrides. Linking up with RL also provides protection of ideas that may not be possible when dealing with competitors. The CRDA is a vehicle that allows PDR Inc., with limited resources, to conduct research and development while providing technology protection.

4.2.2 Benefits to RL

4.2.2.1 It is expected that GaN and its alloys will find many uses in electronic and electro-optical devices. There are already a number of research programs in and outside the government to develop GaN for these applications. Depending on the form, the material is expensive or may not be available. This collaborative research provides RL with a source of GaN in a form that is currently not available.

**5.0 Reports**

5.1 PDR Inc and Rome Laboratory will jointly prepare and submit a progress report at the six (6) month point, and a final report be submitted within two (2) months after completion of work under the CRDA or early termination of the CRDA. Formats for these reports should be coordinated between the parties.

**6.0 Milestones**

**Schedule**



**AMENDMENT 1 TO**
**USAF CRDA NUMBER 96-RL-07**
**COOPERATIVE RESEARCH AND DEVELOPMENT AGREEMENT**
**BETWEEN**
**ROME LABORATORY**
**AND**
**PDR, INC.**

This Cooperative Research and Development Agreement (AGREEMENT) entered into by and between PDR, INC. located at 54 Adams Street, Foxboro, MA 02035 and the United States of America as represented by the Department of the Air Force, Rome Laboratory, located at 26 Electronic Parkway, Rome New York 13441-4514. The parties agree to amend the terms and conditions of this AGREEMENT as follows:

Article 8, Section 8.1 is amended to read:

8.1 Term and Extension. The term of this AGREEMENT is for a period of thirty **(30)** months, commencing on the EFFECTIVE DATE of the original AGREEMENT dated 22 May 1996. This AGREEMENT shall expire at the end of this term unless both Parties hereto agree in writing to extend it further. Expiration of this AGREEMENT shall not affect the rights and obligations of the Parties accrued prior to expiration.

APPENDIX A Work Plan: Delete paragraphs 3.1, 3.2, 4.1.1.1, & 4.1.1.2 and insert the following plus the new milestone schedule.

3.1 Task 1 - Technology Investigation

3.1.1 Both PDR and RL have examined the technical and sales literature and have talked to various venders about nitride sputtering targets. No commercial sputtering target manufacturer currently produces GaN sputtering targets for sale. This is because traditional fabrication technologies have not proven successful at consolidating GaN powder into a dense target. There are reports in the technical literature suggesting that GaN can be synthesized by using a radio frequency power supply to excite gallium and nitrogen molecules at low pressure (below atmospheric) so they chemically combine. This work will use commercial GaN powder that is sent through a radio frequency plasma torch at atmospheric pressure to deposit a thick layer of GaN for use as a sputtering target.

3.2 Task 2 - Preliminary Design

3.2.1 Most of the preliminary design work focused on the stable operation of a plasma torch at atmospheric pressure with argon and nitrogen as the plasma gases. A quartz plasma torch has now been designed by PDR and RL with help from Finkenbeiner, Inc., technical glass. Construction of the torch will require approximately two weeks.

re: Tower

4.1.1.1 PDR Inc. will complete the "Customer Questionnaire" provided in Appendix B to the CRDA. This questionnaire will be completed within thrity (30) days of completion of work under this CRDA, and sent to RL in accordance with Article 12.1.A of this CRDA

4.1.1.2 PDR Inc. will attempt to plasma spray GaN powder onto a backing plate. Both the GaN powder and copper backing plates will be provided by RL. If the spraying of GaN is successful, PDR Inc. will spray deposit five laser evaporation and two sputtering targets and provide them to RL for characterization and testing. Initial targets will be thin to validate that the material is the correct composition with low impurity content. PDR Inc. will also design a fixture assembly for plasma spraying gallium metal with the nitrogen plasma spray gun in an attempt to form GaN. If successful, both the GaN targets and powder could become commercial products.

4.1.1.3 Interim and final reports

4.1.2 RL

4.1.2.1 RL currently has a program to develop wide bandgap nitride semiconductors in both bulk and thin film form. Bulk powdered GaN is costly due to the time consuming preparation procedure. Bulk solid GaN in the form of sputtering targets is not available due to the difficulty in sintering or consolidating the material into a dense piece. In order to carry out the bulk crystal growth program, RL will need a less costly source of GaN powder as a starting material. If the reaction of gallium metal with nitrogen in the plasma spray gun is successful, this could be an alternate source for the GaN powder. RL is also interested in thin film deposition and characterization of GaN. However, there are no commercial suppliers of GaN sputtering targets. Success in plasma spraying a thick GaN layer onto a backing plate will provide RL a source for these targets. The technique of plasma spraying has been used to deposit many refractory metals and oxides onto mandrels to form intricate shapes for the aerospace industry so this may have a fairly good chance of success in depositing targets.

4.1.2.2 Interim and final reports

4.2 Benefits

4.2.1 Benefits to PDR Inc.

4.2.1.1 Presently, the nature of business in the commercial and government world require that product demonstrations be conducted before concept designs are considered for broad development. PDR Inc. is linking up with RL through this CRDA to advance an idea from concept to commercialization. PDR Inc. does not have the resources to characterize GaN targets made by plasma spray deposition. The collaboration with RL will provide this ability. In addition, it is also necessary to test the target by using it to deposit thin films of GaN and to characterize the optical and electronic properties of these films. PDR Inc. does not have thin film deposition equipment, but the collaboration with RL provides a means to accomplish this task, especially since RL has an interest in wide bandgap semiconductors that includes nitrides. Linking up with RL also provides protection of ideas that may not be possible when dealing with competitors. The CRDA is a vehicle that allows PDR Inc., with limited resources, to conduct research and development while providing technology protection.

4.2.2 Benefits to RL

4.2.2.1 It is expected that GaN and its alloys will find many uses in electronic and electro-optical devices. There are already a number of research programs in and outside the government to develop GaN for these applications. Depending on the form, the material is expensive or may not be available. This collaborative research provides RL with a source of GaN in a form that is currently not available.

3.2.2 RL and PDR have constructed an atmospheric tight protective box with a mount for the plasma torch. This box was required to exclude water and oxygen during the spraying process. This ensures that the product is free from oxide contamination.

4.1.1.1 PDR will attempt to plasma spray GaN powder onto a backing plate. Both the GaN powder and copper backing plates will be provided by RL. If the spraying of GaN is successful, PDR will spray deposit five laser evaporation and two sputtering targets and provide them to RL for characterization and testing. Initial targets will be thin to validate that the material is the correct composition with low impurity content. PDR will also design a fixture assembly for plasma spraying gallium metal with the nitrogen plasma spray gun in an attempt to form GaN. If successful, both the GaN targets and powder could become commercial products.

6.0 Milestones




7

*IN WITNESS WHEREOF*, the Parties have caused this AGREEMENT to be executed in triplicate by their duly authorized representatives as follows:

PDR, INC.:

By: Kenneth Preston
(Signature)

Name: Kenneth Preston

Title: President / PDR Inc.

Date: 8 MAY 97

ROME LABORATORY:

By: [signature]
(Signature)

Name: HORST R. WITTMANN

Title: Director, RL/ER

Date: 13 May 97

Air Force, U.S. Government Reviewing Official:

By: Ted F. Bowlds
(Signature)

Name: TED F. BOWLDS

Title: COMMANDER, ROME LAB

Date: 21 MAY 97

8

AMENDMENT 2 TO
USAF CRADA NUMBER 96-RL-07
COOPERATIVE RESEARCH AND DEVELOPMENT AGREEMENT
BETWEEN
AFRL
AND
PDR, INC.

This amendment to the Cooperative Research and Development Agreement (AGREEMENT) is entered into by and between PDR, Inc., located at 54 Adams Street, Foxboro, MA 02035 and the United States of America as represented by the Department of the Air Force, Air Force Research Laboratory, Sensors Directorate, located at 2241 Avionics Circle, Wright-Patterson AFB OH 45433-7320. The parties agree to revive and amend the terms and conditions of this AGREEMENT as follows:

1. In this CRADA and Amendment 1, change all references to "RL" to "AFRL" and "Rome Laboratory" to "Air Force Research Laboratory".

2. In Article 1, paragraph 1.1, change "Rome, New York" to "Wright-Patterson AFB, Ohio".

3. In Article 3, add new paragraph's 3.2.1 and 3.2.2. as follows:

3.2.1. AFRL shall, at no expense to AFRL, allow PDR to take all PDR property after termination or expiration or after usage ceases under this AGREEMENT in the condition in which it was received, normal wear and tear, and consumption due to normal usage excepted.

3.2.2 PDR shall use the glass tower designed by both parties, as well as the aluminum enclosure (but not the Zerodur Window), associated with the plasma system for a period of one year, and thereafter by agreement. PDR shall relocate this equipment to a location other than Hanscom AFB.

4. In Article 4, paragraph 4.2, delete present address and insert

AFRL/SNF
Attn: Michelle Bell
2241 Avionics Circle
Wright-Patterson AFB OH 45433-7320

5. In Article 5, paragraph 5.2, add new paragraphs as follows:

5.2.1. During the period of this CRADA, but not as part of any CRADA Task, Air Force employees and/or contractor employee(s) made inventions disclosed in Air Force Invention No.'s AFB00437 and AFB00473. These inventions are being placed UNDER this AGREEMENT for the revival of this CRADA.

5.2.2. PDR will be granted a license on both of the invention disclosures. These licenses will be exclusive and will convert to non-exclusive one year after the issuance of any patent from either disclosure. The license to Air Force Invention AFB00437 will be limited to the GaN powders for the manufacture of targets.

5.2.2.1. There will be no upfront payments nor minimum annual royalty payments. A 5% royalty on gross sales and 50% royalties from sublicensing will be required. Other terms and conditions will be negotiated.

6. In Article 7.2., after the first sentence add:

"The Parties to this AGREEMENT shall identify any prospective PROPRIETARY INFORMATION before it is developed in order to insure its protection."

7. In Article 8.1, add new paragraph 8.1.1 as follows:

8.1.1 A first amendment extended the CRADA for 30 months until 22 November 1998. As a result of a dispute(s), work was effectively terminated before this date. This revival of the CRADA implements the resolution of that dispute. The CRADA shall be extended for a six month period commencing on the signing of this amendment by the reviewing official.

8. In Article 10, paragraph 10.1, add between the first and second sentence:

"Any gallium nitride targets provided by PDR, Inc. shall be returned by AFRL after completion of sputter deposition testing and associated characterization. "

9. In Article 10.1, add new paragraph 10.1.1. as follows:

10.1.1. PDR's targets #1 and #2 are placed UNDER this AGREEMENT as well as any future gallium nitride targets that the parties agree to test and analyze.

10. In Article 12, paragraph 12.1 A, delete present RL address and insert the following:

AFRL: Attn: Samuel Rosengarten
AFRL/SNOX
2241 Avionics Circle
Wright-Patterson AFB OH 45433-7320
Phone (937) 255-6543 (x4121)



(19)

Fax (937) 656-4676

In Article 12, paragraph 12.1 B, delete present RL address and insert the following:

AFRL: Attn: Dr. Alvin Drehman
AFRL/SNHX
80 Scott Rd.
Hanscom AFB MA 01731-2909
Phone (781) 377-4823
Fax: (781) 377-6948

11. In Appendix A, Work Plan, Title, second line, delete "Process" and add, "and Other Processes".

12. In Appendix A, Work Plan, second subparagraph of paragraph 2.0, delete last sentence and insert

"To complete this CRADA, PDR, Inc. and AFRL will test and characterize Target #2 using the technique of sputter deposition."

13. In Appendix A, Work Plan, in paragraphs 3.1 and 3.1.1. by the first Amendment, delete these and insert the following:

3.1 Task 1 - Technology Investigation

Both PDR and AFRL have examined the technical and sales literature and have talked to various vendors about nitride sputtering targets. No commercial sputtering target manufacturer currently produces GaN sputtering targets for sale.

3.1.1 PLASMA SPRAY DEPOSITIONS - There are reports in the technical literature suggesting that GaN can be synthesized by using a radio frequency power supply to excite gallium and nitrogen molecules at low pressure (below atmospheric) so they chemically combine. AFRL and PDR have constructed an operational atmospheric pressure RF plasma system located at AFRL. Attempts to use commercial GaN powder sent through the plasma torch to deposit a thick layer of GaN were unsuccessful. Future design enhancements suggest the technique could still work. These enhancements will be reviewed and the items associated with the plasma system will be moved to a different location by PDR in accordance with Article 3, paragraph 3.2.2. of this Amendment, upon the signing of this CRADA, for further investigation by PDR.

14. In Appendix A, Work Plan, in paragraph 3.2, delete paragraphs 3.2.1 and 3.2.2 and add new 3.2.1. as follows: