3.2.1. All design work has been completed during the first extension of this CRADA.

15. In Appendix A, Work Plan, paragraph 3.3.1, insert new sentence at the start of paragraph 3.3.1. as follows:

"This Task is not required during this revival/extension."

16. In Appendix A, Work Plan, paragraph 3.4, delete "Task 4 – Plasma Spray Targets" and insert:

Task 4 - Targets

17. In Appendix A, Work Plan, delete paragraph 3.4.1 and insert new paragraph 3.4.1. as follows:

3.4.1 PDR TARGETS: The targets delivered to AFRL, noted as Targets #1 and #2, are the property of PDR; the fabrication process is outside the scope of this CRADA; and these targets and any others provided by PDR are provided at no cost to AFRL.

Target #1-Pulse Laser Deposition (PLD): Target #1 was characterized by AFRL starting in June 1997. It was determined by the Air Force personnel that the properties of this target were suitable for investigating its use in PLD. Over a nine (9) month period, twenty five (25) depositions were deposited onto various substrates. AFRL has characterized the quality of these depositions and was unable to prevent particles from the target being deposited with the nitride film. No further PLD experiments on Target #1 are planned by AFRL to determine changes in the process.

Target #2- Sputtering: GROWTH OF GaN BY LOW ENERGY SPUTTER DEPOSITION. AFRL, using Target #2 and a very low energy, off-axis reactive sputtering system at relatively high pressures (50 to 200 m torr), was able to grow particle free GaN films. This low energy deposition technique was successful and offers the potential for epitaxial growth of semiconductor films, which are not normally obtainable by sputter deposition. The process grew near epitaxial, GaN (0001) oriented successfully on c-axis sapphire substrates. The resulting films were grown using substrate temperatures of 700 to 950 C and under various deposition conditions. Atomic force microscopy was used to determine the growth morphology and roughness of the films. X-ray diffraction was used to verify phase purity and orientation, and x-ray rocking curves were used to characterize both the perpendicular and in-plane alignment of the nitride films. The films were also characterized electronically and optically. This new deposition technique offers the potential of using a lower deposition temperature than required by MOCVD (metal organic chemical vapor deposition).

19. In Appendix A, Work Plan, paragraph 3.6.1., add at end of present sentence:

"Efforts to make plasma spray GaN targets were not successful under the original CRADA."

20. In Appendix A, Work Plan, paragraph 3.6, add new paragraph 3.6.2. as follows:

3.6.2. A data package prepared by AFRL summarizes characterization data on Targets #1 and #2 through November of 1998. Although this information was not considered proprietary, it has not been released to the public except with the consent of PDR.

21. In Appendix A, Work Plan, paragraph 3.7.1, delete "and laser evaporate" and insert "aforementioned" before "GaN".

22. In Appendix A, Work Plan, paragraph 3.9.1 add new paragraph 3.9.1. as follows:

3.9.1. A final report will be prepared by PDR and coordinated with AFRL to insure statements therein are appropriate for public release.

23. In Appendix A, Work Plan, delete paragraphs 4.0 to 4.1.1.2. and insert the following:

4.0 DELIVERABLES AND DESIRED BENEFITS

4.1 Deliverables

4.1.1. PDR Inc. will collect the information listed below and submit a final report: Target characterization, PLD and Sputtering efforts, Plasma system, and Recommended Design enhancement.

4.1.2. AFRL

4.1.2.1. AFRL has applied and characterized film depositions created by the (2) two GaN targets provided by PDR, Inc. This information will be supplied to PDR for the final report. In addition, a synthesis process has been invented, which has excellent potential for producing high purity GaN, and patent applications have been filed. AFRL will provide information allowing PDR to determine if this process can enhance the current target technology or be used in alternative target processes.

24. In Appendix A, Work Plan, insert, "This task is not required during this extension." in paragraphs 3.6.1 and 4.1.2.1 at the start thereof.

25. In Appendix A, Work Plan, delete paragraphs 4.2 to 4.2.2.1., and insert the following:

4.2 Benefits



22

### 4.2.1 Benefits to PDR, Inc.

Presently, the nature of business in the commercial and government world requires that demonstrations be conducted before concept designs are considered for broad development. PDR Inc. is linking up with AFRL through this CRADA to advance ideas from concept to a group of commercial products. PDR Inc. does not have the resources to characterize the targets, perform enhancements or develop application. The collaboration with AFRL will provide this ability. In addition, it is also necessary to conduct tests on films of GaN and to characterize the optical and electronic properties of these films. PDR Inc. does not have thin film deposition equipment, but the collaboration with AFRL provides a means to accomplish this task, especially since AFRL has an interest in wide bandgap semiconductors that includes nitrides. Linking up with AFRL also provides protection of ideas that may not be possible when dealing with competitors. The CRADA is a vehicle that allows PDR Inc., with limited resources, to conduct research and development while providing technology protection until a viable level is reached where it can be introduced into a commercial market.

### 4.2.2. Benefits to AFRL

It is expected that GaN and its alloys will find many uses in electronic and electro-optical devices. There are already a number of research programs in and outside the government to develop GaN for these applications. Depending on the form, GaN material is expensive or may not be available. This collaborative research provides AFRL the opportunity to investigate a source of GaN in a form that is currently not available.

**27.** In the Appendix A, Work Plan, delete paragraph 6.0. and insert new paragraph 6.0 as follows:

6.0 Milestones & Schedule:

The schedule will be updated or modified monthly. PDR will write a brief technical summary monthly and this will be presented to the person listed in Article 12.1 B.

| | | TBD | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|---|
| 6.1 | Interim Report | | xxxxxxxxxxx | | | | |
| | 7.1.1 Target #1 & #2 Characterization | | | | | | |
| | 7.1.2 Films Deposition Data | | | | | | |
| 6.2 | Technology review | | xxxxxxxxxxxxxxxxxxxxxxxxx | | | | |
| | 7.2.1 Target #2 application method | | | | | | |
| | 7.2.2 System Enhancements | | | | | | |
| 6.3 | IC-Plasma System | | | | | | |
| | 7.3.1 Relocation effort | xxxxxxxxxxxx | | | | | |
| 6.4 | Final Report | | | | | xxxxxxxxxx | |



(23)

IN WITNESS WHEREOF, the Parties have caused this AGREEMENT to be executed in duplicate by their duly authorized representatives as follows:

PDR, Inc.

By: Kenneth Preston

Name: Kenneth Preston

Title: President

Date: 8/31/99

Air Force Research Laboratory

By: Richard Payne

Name: RICHARD PAYNE

Title: Chief, AFRL/SNH

Date: 9/9/99

Air Force U.S. Government Reviewing Official

By: Lester McFawn

Name: LESTER MCFAWN

Title: SES, DIRECTOR, SENSORS

Date: 24 SEP 99



(24)

**DEPARTMENT OF THE AIR FORCE**
AIR FORCE RESEARCH LABORATORY
WRIGHT-PATTERSON AIR FORCE BASE OHIO 45433

Office of the Commander

20 OCT 1998

Mr. Kenneth Preston
PDR, Inc.
54 Adams Street
Foxboro MA 02035

Dear Mr. Preston

I am in receipt of your 2 October 1998 letter and have asked my staff to provide me with a quick look and status of your situation.

I understand they are analyzing the Cooperative Research and Development Agreement (CRADA) between you and the Air Force Research Laboratory's Electromagnetics Materials Branch (AFRL/SNHX), Sensors Directorate, to determine what actions to take. I am confident they will make a good faith effort to mutually resolve the issues presented in your letter. You should be hearing from them by the end of the month outlining our position. Please continue to work with AFRL/SNHX and ESC/JAZ to resolve any disagreements you may have over the CRADA.

I can understand your frustration in identifying the "right button to push," given the recent reorganization of the Air Force laboratories into the single Air Force Research Laboratory. The reviewing official for your CRADA is Mr. Lester McFawn, AFRL/SN, 2241 Avionics Circle, Wright-Patterson AFB OH 45433-7320, (937) 255-2620. Please contact Mr. McFawn if you feel you have exhausted your attempts to settle your disagreements with AFRL/SNHX and ESC/JAZ.

I hope this provides you with some answers to your concerns, and assists you in resolving the issues you may have with my organization.

Sincerely

Dick Paul

RICHARD R. PAUL
Major General, USAF
Commander

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PDR, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03-2047C |
| | ) | (Judge George Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DECLARATION OF LESTER McFAWN

I, Lester McFawn, make the following declaration in accordance with 28 U.S.C. § 1746. I am aware that this declaration will be used in the United States Court of Federal Claims, and that this declaration is the legal equivalent to a statement under oath.

1. My name is Lester McFawn and I am an employee of the United States Air Force ("USAF") in Dayton, Ohio. I presently serve as Executive Director of the Air Force Research Laboratory ("AFRL"), Wright-Patterson AFB, Ohio, a position I have held since September 2003.

2. From July 2002 to September 2003, I served as Deputy Director, Plans and Program Directorate, Headquarters Air Force Materiel Command ("AFMC"), Wright-Patterson AFB, Ohio. From October 1999 through June 2002, I served as Director, Plans and Programs Directorate at the Air Armament Center ("AAC"), Eglin AFB, Florida.

3. I served as Director, Sensors Directorate, at AFRL, Wright-Patterson AFB, Ohio, from October 1997 to September 1999. I am somewhat familiar with the controversy in this case and recall PDR, Inc. ("PDR") and PDR's president, Mr. Kenneth Preston. In particular, I recall signing Amendment 2 to the Cooperative Research and Development

Agreement ("CRADA") in September 1999. I further recall that, before signing this Amendment, I met with Dr. Michael Alexander, then serving as a Branch Chief within the Sensors Directorate of AFRL, to familiarize myself with the CRADA and with its purpose and goals.

4. Shortly after signing Amendment 2 to the CRADA, I completed my duties as Director of the Sensors Directorate at Wright Patterson AFB and assumed the role of Director of the Plans and Programs Directorate at the AAC, Eglin AFB, Florida. Thus, after September 1999, I had no dealings with PDR or with Mr. Preston.

5. I have read and familiarized myself with paragraph 8.4 of the original CRADA dated 22 May 1996 which sets forth procedures for resolving disputes arising under or out of the CRADA. From October 1997 through September 1999, as Director of the Sensors Directorate, I also served as Reviewing Official for all CRADA disputes concerning technologies falling under the Sensors Directorate. As such, during that timeframe, I would have been the Reviewing Official for any dispute under the CRADA in question in this case.

6. To the best of my recollection, during the timeframe mentioned above, I received no petition from PDR or from Mr. Preston to resolve any dispute arising under or out of the referenced CRADA. Furthermore, I have queried members of the administrative staff who served in the Sensors Directorate during and after my tenure there, and none recall receiving any formal petition submitted directly to the Sensors Directorate from PDR or Mr. Preston. Also, I never received any contact from the Office of the Secretary of the Air Force concerning any alleged disputes under the CRADA involving PDR. However,

in preparing this Declaration, I have been provided a copy of Mr. Preston's 8 November 2000 letter to the Secretary of the Air Force, which prior to today, I had no knowledge of.

7. Beyond the scope of the CRADA with PDR, I do not recall ever presiding over any formal dispute presented under any CRADA during my tenure at the Sensors Directorate. Moreover, I do not recall ever being contacted regarding any disputes under any CRADA after September 1999, once I had left my post at the Sensors Directorate and commenced my duties at Eglin AFB.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 21st day of February, 2007, at Wright-Patterson AFB, Ohio.

s/ Lester McFawn
Lester McFawn

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PDR, Inc., Plaintiff, | ) | |
| v. | ) | No. 03-2047C (Judge George Miller) |
| THE UNITED STATES, Defendant. | ) | |

DECLARATION OF DONALD W. HANSON

I, Donald W. Hanson, make the following declaration in accordance with 28 U.S.C. § 1746. I am aware that this declaration will be used in the United States Court of Federal Claims, and that this declaration is the legal equivalent to a statement under oath.

1. My name is Dr. Donald W. Hanson and I am an employee of the United States Air Force ("USAF") in New York. I presently serve as Director of the Information Directorate within the Air Force Research Laboratory ("AFRL"), Rome Research Site, Rome, New York. I have held this position since May 2005.

2. From September 1999 to August 2000, I served as Acting Director of the Sensors Directorate within AFRL, located at Wright-Patterson AFB, Ohio. In August 2000, I was appointed as Director of the Sensors Directorate and remained in this post until May 2005.

3. I do not recall Mr. Kenneth Preston, his company, PDR Systems, Inc. ("PDR"), or any CRADA entered into between the US Air Force and these parties. I do not recall receiving any formal dispute from either Mr. Preston or PDR under any such CRADA during my tenure in the Sensors Directorate. I also do not recall receiving any

correspondence from the Office of the Secretary of the Air Force pertaining to any such CRADA.

4. It is possible that, without my knowledge or involvement, a dispute of this nature may have been informally presented to a member of my staff within the Sensors Directorate during my tenure. Though I cannot rule out this possibility, I am confident that I was never petitioned to resolve any formal dispute under a CRADA.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 21st day of February, 2007, at Rome Research Site, Rome, New York.

s/ Donald W. Hanson
Donald W. Hanson

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PDR, Inc., Plaintiff, | ) | |
| v. | ) | No. 03-2047C (Judge George Miller) |
| THE UNITED STATES, Defendant. | ) | |

DECLARATION OF MICHAEL N. ALEXANDER

I, Michael N. Alexander, make the following declaration in accordance with 28 U.S.C. § 1746. I am aware that this declaration will be used in the United States Court of Federal Claims, and that this declaration is the legal equivalent to a statement under oath.

1. My name is Dr. Michael N. Alexander and I am an employee of the United States Air Force ("USAF") in Massachusetts. I presently serve as Technical Advisor of the Electromagnetics Technology Division, Sensors Directorate of the Air Force Research Laboratory ("AFRL"), Hanscom AFB, Massachusetts. I assumed this duty in the year 2000.

2. From November 1989 to April 1997, I served as Chief of the Air Force Rome Laboratory's Electromagnetic Materials Division, which in April 1997 became the Air Force Research Laboratory's Electromagnetic Materials Branch within the Sensors Directorate. From April 1997 to 2000 I continued as Chief of the Electromagnetic Materials Branch, continuing my previous duties in the newly formed organization.

3. Air Force participation in the CRADA between the Air Force and PDR, Inc. was conducted in the Rome Laboratory Electromagnetic Materials Division which became the

Air Force Research Laboratory's Electromagnetic Materials Branch in April 1997. Mr. Michael Suscavage and Dr. Alvin Drehman were the Air Force scientists who worked directly with PDR. I was involved as their supervisor, and also took part in many conversations with Kenneth Preston (President of PDR) and staff intellectual property lawyers within the Electronic Systems Center ("ESC") headquartered at Hanscom AFB, Massachusetts.

4. I am familiar with paragraph 8.4 of the CRADA with PDR, which outlines the formal procedures for resolving disputes arising under the CRADA. Given my position at Rome Laboratory and AFRL, I was in a position to know of or be informed of any formal CRADA disputes submitted to the Reviewing Authority pursuant to paragraph 8.4. To the best of my knowledge, during my tenure at the above-mentioned jobs, Mr. Preston (representing PDR) did not pursue administrative channels in any systematic way, i.e. by following the procedure outlined in paragraph 8.4 of the CRADA. Instead, on or about 2 October 1998, Mr. Preston sent a letter to Major General Richard Paul, then the Commander of AFRL, which contained complaints about his experiences with the CRADA process, thereby bypassing the Reviewing Official.

5. Before he contacted Major General Paul, Mr. Preston did not phone or write me to ascertain the name of the current Reviewing Official. To the best of my knowledge, Mr. Preston also did not query Mr. Julian Siegel, who at the time served as Chief of the Intellectual Property Division, Office of the Staff Judge Advocate, within ESC. Both Mr. Siegel and I had (individually and in concert) previously worked with Mr. Preston, seeking amicable resolution of our differences over the CRADA.

6. Subsequently, Mr. Preston evidently wrote directly to the Secretary of the Air Force, whose Office evidently referred the complaint to the Air Force Inspector General. I had no first-hand involvement with the disposition of this complaint but I have seen some of the correspondences from Mr. Preston and PDR to the Air Force Inspector General and responses from the Air Force.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 22nd day of February, 2007, at Hanscom AFB, Massachusetts.

s /Michael N. Alexander
Michael N. Alexander

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PDR, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03-2047C |
| | ) | (Judge George Miller) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DECLARATION OF SAMUEL ROSENGARTEN

I, Samuel Rosengarten, make the following declaration in accordance with 28 U.S.C. § 1746. I am aware that this declaration will be used in the United States Court of Federal Claims, and that this declaration is the legal equivalent to a statement under oath.

1. My name is Samuel Rosengarten and I am an employee of the United States Air Force ("USAF") in Ohio. I presently serve as Senior Electronics Engineer in the Integration and Operations Division of the Sensors Directorate of the Air Force Research Laboratory ("AFRL"), Wright-Patterson AFB, Ohio. I have held this position for over ten years.

2. As early as 1997 (when AFRL was established) and at least until June 2000, I served as Monitor of all CRADAs throughout the Sensors Directorate as one of my major duties. I don't recall the exact dates of my service because my overall job duties evolved and changed over time. At some point in time, which I do not specifically recall, Ms Leila Oliver (formerly Leila Best) a coworker in the Integration and Operations Division, took over primary responsibility for CRADAs.

3. I recall Mr. Kenneth Preston and his company, PDR Systems, Inc ("PDR"). I also recall that during my tenure as CRADA Monitor in the Sensors Directorate, Mr. Preston

contacted me several times regarding concerns he was having with the CRADA to which PDR was a party. Though I do not remember specific details, I do recall that Mr. Preston contacted me verbally to express his concerns. As a result of these contacts, I spent much time trying to understand Mr. Preston's concerns and to come up with a solution that was agreeable with both parties.

4. On two occasions (in letters dated 7 January 1999 and 19 January 1999), Mr. Preston wrote to me requesting clarification regarding which technologies were considered to be "Under the CRADA." In each of these letters, Mr. Preston asked me to present these issues to Mr. McFawn. My notes reflect that I did relay these technical questions to Mr. McFawn and that they were subsequently resolved. However, according to my understanding of the present litigation, neither of these contacts with Mr. McFawn constituted the formal submission to the Reviewing Authority by Mr. Preston or PDR of the present matter in dispute in this litigation.

5. I am familiar with paragraph 8.4 of the CRADA with PDR, which outlines the formal procedures for resolving disputes arising under the CRADA. As CRADA Monitor from roughly 1997 through June 2000, I was in a position to know of any formal CRADA disputes submitted to the Reviewing Authority by Mr. Preston or PDR pursuant to paragraph 8.4. Though Mr. Preston expressed generalized concerns to me, as described above, I recall no occasion on which he formally submitted a dispute relative to the pending litigation to the Reviewing Official pursuant to paragraph 8.4.

6. I have maintained a file of Mr. Preston's correspondences to this office from as early as November 1998 to as late as February 2001. I have recently reviewed this file, and after such review find no written evidence of any formal dispute (other than the requests

for technical clarification described in paragraph 4 above) submitted either by Mr. Preston or PDR to the Reviewing Official pursuant to paragraph 8.4 of the CRADA. Had Mr. Preston submitted a formal dispute during my tenure as CRADA Monitor, I believe I would have kept a copy of it in my file. It was my practice in dealing with Mr. Preston and others involved in this CRADA to retain written correspondences and not to discard anything.

7. My file does contain a letter dated 8 November 2000 from Mr. Preston to The Honorable F. Whitten Peters, the then-Secretary of the Air Force, in which Mr. Preston outlines certain frustrations he claimed to be experienced under the CRADA. This letter, however, does not appear to be presented in conjunction with a formal dispute procedure pursuant to paragraph 8.4 of the CRADA. In particular, it contains no reference to any prior submissions to the Reviewing Official nor any decision by such Reviewing Official. I do not have further details as to the Air Force's response to Mr. Preston's letter to the Secretary.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 22nd day of February, 2007, at Wright-Patterson AFB, Ohio.

s/ Samuel Rosengarten
Samuel Rosengarten

January 7, 1999

PDR, Inc.
54 Adams Street
Foxboro, MA 02035

Ph 508-543-4052
Fx 508-543-3118

Mr. Sam Rosengarten
AF Research Lab
Technology Transfer Office/XPTT
2130 Eighth Street
Wright-Patterson AFB, OH 45433-7542

Subject: Technology

Sam;

I am followed up with your request to provide information on the efforts performed with Mike Alexander's Group over the past three years. Since these proposals provide a good summary of the vast amount of research and development performed, you can treat them as report cover sheets. Each was coordinated with either Dr. Alexander, Dr. Schott, Dr. Drahmen or Mr. Suscavage, and contains information's referencing the GaN research, enhancements, GaN targets, data, and plasma system design with potential uses. Copies were provided to them.

Since these collaborated efforts focused on the research developed and being developed with Mike Alexander's group, we need to define also under what relationship this efforts where performed under. My accountant and I are continuing to address the target costs that now are considered not part of the CRADA. If like the targets these efforts are also not under the CRADA than like the targets, we will need to treat them as such. If Mike Alexander's group wishes to keep the plasma system we can put a fair cost together and work out intellectual and proprietary information issues.

Abstracts:

| | |
|---|---|
| SBIR; 1/15/98 | Gallium Nitride Targets – Mailed to; BMDO, DARPA, AirForce<br>Plasma System – Air Force, DARPA, AFSOP |
| STTR; 4/15/98 | Gallium Nitride Targets - AFRL<br>Super Sonic Plasma System - BMDO |

If you require assistance presenting these issues to Mr. Mcfawn, I am willing to help you, but I would appreciate it if you did it soon.

Respectively

Kenneth Preston

Kenneth Preston
PDR, Inc.

Enclosed: 4 -abstracts

**- FOR OFFICIAL USE ONLY -**
**AFRL/PDR TECHNOLOGY SUMMARY SHEET**

January 19, 1999

PDR, Inc.
54 Adams Street
Foxboro, MA 02035

Ph 508-543-4052
Fx 508-543-3118

Mr. Sam Rosengarten
AF Research Lab
Technology Transfer Office/XPTT
2130 Eighth Street
Wright-Patterson AFB, OH 45433-7542

Subject: Update on Technology and AFRL paper

Sam;

AL Drehman

I have enclosed a copy of the information sent to Dr. Alexander and Julian Segiel last week. Also I was informed that a paper on sputtering GaN was presented by Dr. Drahmen, who is in Dr. Alexander group, at the MRS international conference in Dec. 98. I would like a copy of this paper and wish you request Dr. Alexander faxes me one.

I am still waiting for you to have Mr. Mcfawns' decision on the abstracts sent earlier. He just needs to write on each **Under the CRADA** or **Not Under the CRADA.** This is critical so I will know under what agreement I was working under and to create an agenda that addresses the issues properly. Stan Collier informed Jessie Erlick last year, nothing was performed under the CRADA, If Mr. McFawn agrees, than I'll treat this work effort like the target effort and present cost sheets at this first meeting.

If you require assistance presenting these issues to Mr. Mcfawn, I am willing to help you, or call him myself; I would appreciate it if you did it before the end of January. Feel free to give me a call if you have any questions.

Respectively

Kenneth Preston

Kenneth Preston
PDR, Inc.

Enclosure

November 8, 2000

Kenneth Preston
PDR, Inc
54 Adams Street
Foxboro, MA 02035

Secretary of the Air Force
Honorable F. Whitten Peters
SAFOS
1660 Air Force Pentagon
Washington D.C. 20330-1660

Ph (703) 697-2302
Fx (703) 695-8413

The Honorable Peters F. Whitten,

Please accept this letter as my request for an investigation of certain matters as outlined below.

Over the last five-year period PDR, Inc. has been part of the two successive Cooperative Research and Development Agreements (CRADA's) with the Air Force Research Laboratory (AFRL) in Bedford, MA. Dr. Payne currently heads the group I have worked with.

It is my belief that the information presented to me and to AFRL's own legal counsel was willfully distorted in order to intentionally embarrass me and harm my credibility and as a result to deprive me the opportunity to finance and commercially develop certain technology, conduct business and earn income. This also caused a great deal of harm to my family both financially and psychologically.

During the last several months AFRL's legal counsel and I uncovered facts that support the above-mentioned issues. It appears that commercial companies, which were operating within the same facilities, were given an access to my intellectual property and granted excessive privileges. In one instance this intellectual property was transferred to an undisclosed commercial company, which is now claiming it as their own.

The AFRL has filed two patents that are covering the technology granted to PDR, Inc. No data to support claims in those patents were provided to me. In addition one patent claims to have better process than the one originally contributed by PDR, Inc. The AFRL has evaluated this original approach and provided at the time very optimistic assessment of the commercial potential of this approach. Were we given a false data or at least one of these new patents is invalid?

The optimistic results given to me by AFRL convinced me to invest an additional capital into the project in excess of what I have been contributing as part of the CRADA. As a result a large debt is owned, which is harming my family.

Background:

USAF CRDA No. 96-RL-07 dated May 22, 1996 and Amendment 1 dated May 21, 1997 were signed between PDR, Inc. and AFRL for the main purpose of ultimately commercializing technology dealing with gallium nitride (GaN).

During the period from October 1996 to April 1997, PDR independently developed a unique method to produce GaN sputtering targets. AFRL enthusiastically accepted two targets, one in May 1997 and the other in October 1997, for characterization and assessment of their applicability for deposition of GaN thin films. Based on the information supplied to us by AFRL, we filed a patent application on December 24, 1997. Under the terms of this CRADA agreement the Air Force was notified that the patent application was filed. The patent No. 5,942,148 was approved on August 24, 1999.

There were no identified disputes; no misunderstandings and no controversies with respect to the work being performed under the CRADA; and it appeared that both sides were extremely excited by the initial results. Both PDR and AFRL have agreed to the public release of some of the work performed under the CRADA, through the AFRL presentation at the MRS Conference on December 5, 1997. The apparent opportunities from this discovery lead to PDR with the approval of AFRL retaining a former Air Force attorney. This attorney was paid by this corporation and had a mandate to guide our joint efforts to it highest potential. Both sides were discussing opportunities for an additional funding through SBIR and STTR proposals, all the intellectual, financial and marketing data considered proprietary were made available to AFRL under the agreement, and I personally invested an additional $80,000 based on very favorable reviews by the AFRL personnel. During the same time, a consolidation of my other CRADA agreements (three in total) was implemented to help AFRL in reorganization of its activities. The proprietary plasma system built at AFRL's premises was an essential part of other CRADA efforts elsewhere and was so identified in one of the other agreements with AFRL's amendment. All these efforts were being funded exclusively by PDR.

On January 13, 1998, Mr. Suscavage after seven exclusive months abruptly stated that the targets didn't work. This is a day before a submission of the SBIR proposal, which was jointly prepared by both sides. At that moment, all lines of communication regarding this matter were shut down. It was, and is our position that all technical information and any inventions made by the same employees performing work under the CRADA should be disclosed to PDR in order to make determination whether or not I may have contributed to these inventions and/or if PDR should request a license from the government for such inventions. AFRL never fully complied with those requests to this day. This was a clear breach of contract as defined by the CRADA agreement. Mr. Drehman notified us that patents were being submitted on technology derived from the use of our targets.

There was a lot of excitement about our technology by third parties. Mr. Colin E. C. Wood of the Office of Naval Research personally endorsed our technology and offered his support in finding funding sources to advance its further development, which by the