IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PDR, INC., Plaintiff, | ) | |
| v. | ) | No. 03-2047C (Judge George W. Miller) |
| THE UNITED STATES, Defendant. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, PDR, Inc. respectfully request the Court to deny the Defendant's Motion for Summary Judgment on the grounds that there are genuine issues of material fact to be heard and decided and therefore the Defendant is not entitled to judgment as a matter of law. In support of its position, Plaintiff offers its pleadings, this brief and its Proposed Findings of Uncontroverted Fact.

## STATEMENT OF FACT

Plaintiff respectfully refers the Court to its Proposed Statement of Uncontroverted Fact.

## ARGUMENT

Defendant claims there are no genuine issues of material fact and that it is entitled to Summary Judgment on the following grounds:

A. Plaintiff did not exhaust its administrative remedies provided for under the Dispute Resolution Clause of the CRADA.

B. Plaintiff is precluded from bringing suit over issues which occurred prior to the signing of the Second Amendment to the CRADA signed by the reviewing Official, Lester McFawn on September 24, 1999.

C. No Air Force patents mirrored the technology developed by the Plaintiff.

**A. The Plaintiff did in fact exhaust its administrative remedies provided for under the Dispute Resolution Clause of the CRADA**

B. When the Plaintiff first sought out the reviewing official for the CRADA no one at Hanscom Air Force Base, Bedford, Massachusetts where the lab was located knew who it was. (See Appendix 69-76) It took the Plaintiff from June to October of 1998 and three letters to Major General Paul, Office of the Commander Air Force Research Laboratories, to finally obtain the name of Lester McFawn.( See Appendix 77-84) On October 21, 1998 the Plaintiff called Mr. McFawn who immediately instructed him to call Sam Rosengarten who was to deal with the Plaintiff's problems at the lab. (See Appendix 85-87 {PDR, Inc.'s phone bills listing Mr. McFawn's phone number as given to Plaintiff in Appendix 84} of Plaintiff's Proposed Statement of Uncontroverted Fact).

The problems were ongoing up to and after the signing of the Second Amendment to the CRADA by Lester McFawn, the reviewing official on September 24, 1999. Defendant argues that no formal request for dispute resolution was made by the Plaintiff, however,

Defendant fails to describe how a formal request for dispute resolution should have been made. In fact the CRADA also fails to describe how such a formal request should be made. The fact remains that through its own efforts and that of its attorney, Plaintiff found the name of the reviewing official spoke with him, was referred to Mr. Rosengarten, and that the Plaintiff was in constant telephone contact with Mr. Rosengarten and AFRL Attorney Julian Siegal at Hancom on a daily basis. The negotiations culminated in the signing of the Second Amendment by the reviewing official. The Second Amendment itself is a running list of the disputes between the Plaintiff and the Defendant.(See Defendant's Exhibit 18-24).

Defendant further argues that Plaintiff did not submit a timely appeal from the decision of the reviewing official to the Secretary of the Air Force. In fact there was no decision to appeal. Plaintiff was satisfied with the out come of the negotiations and the decision to grant it exclusive licenses to the Defendant's patents as reflected in the Second Amendment to the CRADA. However, Defendant breached its agreement with Plaintiff in that Defendant did not give the Plaintiff exclusive licenses to the technology reflected in Defendant's patents making it impossible for Plaintiff to find interested investors. Plaintiff's communications to the Secretary of the Air Force were not an appeal of a decision of the reviewing official, rather a request for an investigation of an outrageous situation at AFRL causing ongoing harm to the Plaintiff.

**B. Plaintiff is not precluded from bringing suit over issues which occurred prior to the signing of the Second Amendment to the CRADA signed by the reviewing Official, Lester McFawn on September 24, 1999.**

Defendant argues that the Second Amendment acted as an accord and satisfaction settling all disputes between Plaintiff and Defendant. This would have been true had the Defendant performed its part of the bargain, i.e. had the Defendant granted to the Plaintiff the exclusive licenses to the technology contained in the Defendants patents. Defendant failed to grant the exclusive licenses to the technology which it had already licensed to other parties. Defendant failed to deliver, breached its agreements contained the Second Amendment and therefore there was no accord and satisfaction. There was only a breach of contract.(See Appendix 213 Plaintiff's Declaration #50-52).

**C. The Air Force patents did mirror the technology developed by the Plaintiff.**

Defendant further argues that its GaN research predated that of the Plaintiffs and that its patents did not reflect the Plaintiffs technology. There is no dispute that Defendant was working with GaN and ammonium salts prior to the CRADA with the Plaintiff. However, that is not the point in issue. GaN research was being conducted world wide at that time. The entire purpose of the Plaintiff's CRADA was to develop an electronic grade target of GaN which was not available anywhere. The first paragraph Section 2.0 of the Appendix to the CRADA (Defendant's Appendix 10) clearly states "GaN in powder form is impure and costly to manufacture and GaN sputtering targets are not available." In other words the Defendant was incapable of making such a target and there were none available in the marketplace. Without a GaN target, the Defendant could not conduct its laser ablation

and off axis sputtering experiments and attempt to create electronic grade GaN films. Plaintiff's expert, Dr. D. Brooke Hatfield clearly states in his written opinion (Defendant's Appendix 53)

- "The description of ammonium salts in patent A would be sufficient cause for anyone with a cursory understanding of chemistry to believe that any ammonium salt would work.
- That the use of ammonium carbonate, as described in patent A, is sufficient evidence to believe that a gallium halide intermediate is not required for the production of GaN from Ga metal and nitrogen gas.
- The processes described by and claims made by Patents B, C, D and E (Defendant's patents) flow logically from work published in 1969 and patent A.
- "The process described by and claims made by patents B, C, D, and E (Defendant's patents) flow logically from work published in 1969 and patent A (Plaintiff's patent).
- As you have informed me that the author of Patent E participated in the characterization of the method described in patent A, one can easily see the connection between the use of ammonium halides in patent E and the use of ammonium carbonate in patent A."

When Plaintiff succeeded in making the target and patented its technology it was dawn over Marble Head at AFRL Hanscom. After years of failure in trying to make an electronic grade GaN target, AFRL suddenly saw the light and in a flurry of activity, two

patent applications utilizing ammonium salts were filed which mirrored the Plaintiff's technology. The reason the Defendants patents mirrored the Plaintiff's technology was not because they did or did not utilize ammonium salts, nor was it whether they did or did not utilize a hot press method. The reason the Defendant's two patents mirror the Plaintiff's technology is due to the use of the ammonium salts in a manner which allows the stabilization of GaN to be either transported to another medium or to be densified into a target. Plaintiff's process was to disassociate the salts in a controlled environment such as hot press which allowed GaN to form or to prevent its disassociation, one application of which would be to create a target. Defendant's patents demonstrate techniques which mirrored Plaintiff's which AFRL did not develop until Mr. Suscavage and Mr. Drehman obtained the data they needed (which was withheld from Plaintiff) from the laser ablation and off axis sputtering and other experimentation with Plaintiff's targets, which up until that point in time was unavailable to them.

Defendant's Motion for Summary Judgment should be denied in full.

Respectfully submitted,

s/ PHILIP F. FILOSA

Philip F. Filosa
P.O. Box 808
Wrentham, MA 02093
Tel.: (508) 397-0525
Email: pffilosa@netzero.net

Attorney for Plaintiff

PETER D. KEISLER
Assistant Attorney General

Jeanne E. Davidson
Director

J. Reid Prouty
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
ATTN: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7586
Fax: (202) 514-7969

April 7, 2007

Attorneys for Defendant

CERTIFICATE OF SERVICE

I certify under penalty of perjury that on this ____th day of ________, 2007, a copy of the foregoing "PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ PHILIP F. FILOSA

Attorney for the Plaintiff.