IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PDR, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 03-2047C |
| v. | ) | |
| | ) | (Judge George Miller) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

In our motion for summary judgment, we demonstrated that plaintiff, PDR, Inc.'s ("PDR's") claims should be dismissed and judgment entered against PDR because it failed to exhaust its contractual remedies and because PDR and the United States Air Force ("the Air Force") had completed an accord and satisfaction. We further demonstrated that PDR's quantum meruit claims should be dismissed because the Air Force utilized no new technology created by PDR. In opposition to our motion, PDR advances the contradictory assertions that the "accord" was not satisfied because the Air Force did not grant PDR exclusive licenses, while, simultaneously claiming that the agreement that formed the basis of the accord and satisfaction had resolved all disputes between the parties such that mandatory exhaustion of administrative remedies was unnecessary. PDR's view of the case is demonstrably flawed because, if the Air Force had, in fact, breached the requirements contained in the Amendment 2 to PDR's Co-operative Research and Development Agreement ("CRADA", Amendment 2 to the CRADA will also be referred to as simply "Amendment 2," herein) with the Air Force, it would have, by definition, created a dispute between the parties, requiring recourse to the dispute resolution mechanisms contained in the CRADA. Moreover, the Air Force demonstrably complied with the terms of the accord and satisfaction. Finally, notwithstanding PDR's attempts to

recharacterize its claims regarding its technology, the admissible evidence before the Court demonstrates that the Air Force took no technology from PDR.

I. PDR Is Precluded From Bringing This Suit By Its Failure To Exhaust The Administrative Remedies Embodied In The CRADA's Dispute Resolution Clause

In our opening brief, we demonstrated that PDR's CRADA required it to pursue the administrative dispute resolution procedure contained therein prior to seeking judicial review. See App. 5[1] (CRADA Disputes Clause); United States v. Joseph A. Holpuch Co., 328 U.S. 234 (1946). In response, PDR does not challenge the applicability of the disputes clause to his complaint, or the legal effect of a failure to exhaust. See Pl. Opp. 2-3.[2] Instead, PDR asserts that it did exhaust its remedies. Id. As we establish below, PDR's arguments that it exhausted its administrative remedies should be rejected.

A. The CRADA's Dispute Resolution Clause Is Not Inadequate Or Unavailable And PDR Could Have Complied With It, But It Did Not

Although PDR erroneously asserts that it exhausted its remedies, it also advances arguments indicating that it had difficulty doing so – namely, that it had difficulty finding the "Reviewing Official" as set forth in the Dispute Resolution Clause, see Pl. Opp. 2, and that the Dispute Resolution Clause did not set forth the means by which "a formal request for dispute resolution should have been made." Pl. Opp. 3.

[1] "App. __" refers to a page of the appendix attached to "Defendant's Proposed Findings Of Uncontroverted Fact."

[2] "Pl. Opp. __" refers to a page of "Plaintiff's Opposition To Defendant's Motion For Summary Judgment."

Assuming that PDR encountered difficulty in determining the identity of the Reviewing Official from June to October of 1998[3], this fact would make no difference to PDR's obligations here. First, PDR agrees that the Air Force ultimately did name a Reviewing Official for PDR to consult within five months of PDR's request. Pl. Opp. 2. Second, this alleged delay in identifying the Reviewing Official during this time period did not materially affect PDR's ability to utilize the CRADA's dispute resolution procedure to arrive at a satisfactory resolution of its dispute with the Air Force. In fact, PDR concedes that, after the Air Force identified Mr. McFawn as the Reviewing Official, PDR and the Air Force were able to come to a resolution of their disputes (encapsulated in Amendment 2) that "satisfied" PDR. Pl. Opp. 3. Thus, PDR's complaints about determining the identity of the Reviewing Official are immaterial because the administrative appeal procedure was demonstrably successful and not "inadequate or unavailable." Holpuch, 328 U.S. at 239.

Likewise, PDR's complaint that the CRADA's Dispute Resolution Clause did not adequately set forth "how a formal request for dispute resolution should have been made," see Pl. Opp. 3, is not compelling for two reasons: First, PDR demonstrated that it knew how to utilize the CRADA's Dispute Resolution Clause by virtue of its contacting the commander of the Air Force Research Laboratory, Major General Paul, to determine the identity of the Reviewing Official and its interaction with Mr. McFawn and his subordinates, which led to the initial resolution of complaints that PDR found to be "satisfactory." Pl. Opp. 2-3. Second, the Dispute

[3] We disagree with PDR's assertion of facts here because the first document in the record provided by PDR, requesting the name of the reviewing official was dated July 30, 1998, not June 1998. See Appendix to Plaintiff's Proposed Findings of Uncontroverted Fact, pages 71-76.

Resolution Clause is rather simple and self-explanatory. It merely requires that disputes be "referred to the REVIEWING OFFICIAL for decision." App. 5. Indeed, the Dispute Resolution Clause here is almost identical to the one that the Supreme Court allowed in Holpuch, strongly suggesting its adequacy. See 328 U.S. at 236.

Inasmuch as the Dispute Resolution Clause requires nothing specific for such a "referr[al]," there is no reason that PDR could not have used the common and everyday meaning of these words and simply read that requirement as one of reasonably making known to the Reviewing Official that PDR requested a final decision pursuant to Article 8.4.2. PDR had demonstrated its ability to contact the Reviewing Official and, as no special form was required for such a request, PDR could have satisfied the Dispute Resolution Clause had it reasonably made clear to the Reviewing Official that it desired a final decision regarding the dispute.

B. PDR's Allegations That The Air Force Breached The Requirements Contained In The Second Amendment To The CRADA Should Have Been Subject To The Administrative Remedies In The CRADA's Dispute Resolution Clause

PDR admits that it pursued no administrative remedies to resolve any dispute related to the Air Force's compliance with its obligations related to the Amendment 2. Pl. Opp. 3. It squares this admission that it did not pursue its administrative remedies with the requirement that it do so by asserting that it had been satisfied with the results of its earlier negotiations with the Air Force and that "there was no decision to appeal." Id. This entirely misses the point: if PDR believed that the Air Force was not in compliance with its obligations under Amendment 2, the Disputes Resolution Clause plainly required recourse to the Reviewing Official, with an appeal to the Secretary of the Air Force. App. 5. Since PDR plainly did not seek resolution of its disputes relating to Amendment 2 via the CRADA's mandatory dispute mechanisms, these

claims, all "arising out of or related to" the CRADA, must be dismissed. Holpuch, 328 U.S. at 239.

II. PDR Is Precluded From Bringing Claims Related To Disputes That Occurred Prior To Amendment 2 To The CRADA Because That Amendment Acted As An Accord & Satisfaction To Those Disputes

In our opening brief, we demonstrated that Amendment 2 constituted an accord and satisfaction to all disputes preceding its enactment. PDR's response, that the amendment was not an effective accord and satisfaction because it was allegedly breached, see Pl. Opp. 4, is not persuasive because the "satisfaction" of PDR's claims was accomplished by the very act of the Air Force's signing Amendment 2, granting PDR additional rights never contemplated under the original CRADA; moreover, the Air Force demonstrably complied with its side of the bargain by granting PDR the exclusive licenses required by Amendment 2.

A. The Execution Of Amendment 2 To The CRADA Acted As Both Accord and Satisfaction

Although the "satisfaction" in an accord and satisfaction often requires separate performance of the agreement (or "accord"), the "promise or agreement of accord itself" may be taken in satisfaction of the original demand in the proper circumstances. In Re Kellett Aircraft Corporation, 173 F.2d 689, 692 (3rd Cir. 1949). While there is a presumption against the agreement constituting both accord and satisfaction, it can do so if the intention is clear. Id.; see also Larsen v. Erickson, 549 F.2d 1136, 1139 (8th Cir. 1977) (applying Minnesota law); American Textile Mach. Corp. v. United States, 220 F.2d 584 (6th Cir. 1955) (setting forth exception allowing accord to set aside original agreement if purpose clearly shown); Singer Housing Co. v. Seven Lakes Venture, 466 F.Supp. 369, 377 (D. Colorado 1979). Here, the plain language of Amendment 2 makes this intent clear.

As noted in our opening brief, Paragraph 7 of Amendment 2 provides:

> In Article 8.1, add new paragraph 8.1.1 as follows:
>
> 8.1.1 A first amendment extended the CRADA for 30 months until 22 November 1998. As a result of a dispute(s), work was effectively terminated before this date. This revival of the CRADA implements the resolution of that dispute. The CRADA shall be extended for a six month period commencing on the signing of this amendment by the reviewing official.

App. 19 (emphasis added). Thus, the parties agreed that the revival of the CRADA, as done by Amendment 2 (which, in addition to extending the CRADA's time-line, obligated the Government to grant PDR licenses upon two inventions, App. 19) implemented the resolution of their preceding disputes. Indeed, for PDR to argue otherwise while suing the Air Force for its failure to comply with Amendment 2 (see, e.g., Comp. ¶¶ 70, 80[4]) would be to allow PDR the benefit of the bargain in Amendment 2 without giving the Air Force any of its negotiated consideration.

B. The Air Force Complied With Its Obligations Under Amendment 2 To The CRADA

Even if the execution of Amendment 2 did not constitute a satisfaction, the undisputed evidence demonstrates that the Air Force complied with all obligations under that Amendment.

PDR asserts that the Air Force breached Amendment 2 to the CRADA by failing to grant it an exclusive license upon two "invention disclosures" that it had already licensed to other parties. Pl. Opp. 4. This claim is faulty because the Air Force, in fact, issued the "exclusive license" required by Amendment 2 and an "exclusive license" does not foreclose prior licensing of some rights to other parties. Moreover, the party to whom other rights were granted waived

---

[4] "Comp. __" refers to a paragraph of PDR's "Amended Complaint."

them at the request of the Air Force, eliminating any residual doubt that the Air Force complied with its agreement.

1. The Air Force Executed The Required Exclusive License

We have attached the exclusive license for the two "invention disclosures" as required by Amendment 2 to the CRADA and executed by the Air Force and PDR. See Supp. App. 1-18.[5] This document demonstrates Air Force compliance with the terms of Amendment 2. Moreover, Mr. Preston (PDR's principal) admits, in his declaration filed with PDR's opposition to our motion, that the Air Force signed the requisite licenses in June 2000. Pl. App. 212, ¶44.[6] As Mr. Preston also admits, the Air Force informed Solid State Scientific Corporation ("SSSC"), which, as the co-inventor of the referenced inventions, possessed limited licenses upon them, see Pl. App. 148, ¶ 7, that its licenses were terminated. Pl. App. 213, ¶ 53.

2. Limited Pre-Existing License Rights Held By Another Party Do Not Preclude The Subsequent Issuance Of An Exclusive License

"Exclusive license" is a term of art, and even had SSSC retained its earlier-granted limited licenses, the Air Force still retained the authority to grant an "exclusive license" to PDR, which would consist of that portion of its rights remaining. Western Electric Co. v. Pacent Reproducer Corp., 42 F.2d 116 (2nd Cir. 1930). This is consistent with the terms of the licensing agreement here, which provide that "[t]his license shall be subject to any license in force at the time of the grant of this license." Supp. App. 8, Article IX, 1, and notes that "the desired

[5] "Supp. App. __" refers to a page of the supplemental appendix attached to this filing.

[6] "Pl. App. __" refers to a page of the appendix attached to PDR's "Proposed Findings of Uncontroverted Fact."

practical application has not been achieved . . . under any nonexclusive license which has been granted." Supp. App. 3, Preamble ¶ (B).

3. The Other Party Holding Limited License Rights Surrendered All Such Rights, Making PDR's "Exclusive License" The Sole License Issued By The Air Force Upon The Air Force Inventions

Despite its compliance with the exclusive licensing requirements of Amendment 2 to the CRADA, the Air Force sought to allay PDR's concerns regarding the limited license earlier given to SSSC and prevailed upon that company to explicitly waive all relevant non-exclusive rights upon the inventions referenced in Amendment 2. SSSC did so by executing the document found on page 20 of our Supplemental Appendix. See also Pl. App. 148, ¶7. Accordingly, PDR has no basis to allege that the Air Force failed to comply with the terms of Amendment 2. Indeed, the Air Force can be seen to have taken actions well beyond those required by the Amendment.

IV. No Air Force Patents "Mirrored" Technology Provided To It By PDR

In our moving brief, we demonstrated that, contrary to the fourth count of PDR's complaint, the Air Force had not misappropriated PDR's intellectual property by obtaining patents which "mirrored" PDR's technology. See Comp. ¶ 84; see also Comp. ¶ 72 (similar allegations). We addressed the four patents that PDR's expert asserted were dependent upon PDR technology, see App. 50-53, and proved that they were not based upon new PDR technology. In response, PDR completely shifts the theory of its claim, away from the statement of its expert, Dr. Hatfield, who had generally concluded that the claims made in four Air Force patents flowed from PDR's work because of their use of ammonium salts and hot pressing, App. 53, to a claim that the "mirroring" came "due to the use of ammonium salts in a manner which

allows the stabilization of GaN to be either transported to another medium or to be densified into a target." Pl. Opp. 6. This new allegation is not supported by reference to any evidence in either the body of PDR's opposition to our motion for summary judgment, see Pl. Opp. 4-6, or in PDR's proposed finding of uncontroverted facts. Moreover, PDR's newly framed allegation is demonstrably untrue.

As best as we understand it, PDR's newly framed assertion is that PDR's proprietary technology represented the purportedly "new" idea of using ammonium salts to allow for the stabilization and transport of Gallium Nitride. Pl. Opp. 6. This allegedly "new" idea of PDR's was demonstrably predated by Air Force-supported research. Dr. Ferguson's report (adopted by him under oath for our motion), discussed the Air Force's prior research involving ammonium salts and quoted a March 1996 proposal by an Air Force Research Lab ("AFRL") researcher, which stated, in relevant part, that:

> Vapor Phase Growth of AIN, InN, and GaN
>
> AFRL (Air Force Research Laboratories) has found that ammonium chloride (NH4Cl) is a promising transport agent for the chemical vapor transport of these nitrides.

App. 80. Dr. Ferguson explained the pre-existence of this research in greater detail in the text of his report surrounding this excerpt (see App. 79-80), but this excerpt from the March 1996 proposal is dispositive.[7] Accordingly, the uncontroverted evidence demonstrates that the Air Force did not misappropriate any of PDR's intellectual property by "mirroring" its patent.

---

[7] The Court needs not consider this matter to be considered a "battle of the experts" requiring resolution at trial: there is no expert opinion or other evidence from PDR refuting Dr. Ferguson's finding that the Air Force had a robust program utilizing ammonium salts in Gallium Nitride fabrication prior to PDR's involvement in the matter.

CONCLUSION

Accordingly, for these reasons and the reasons stated in our moving brief, we respectfully request that the Court grant summary judgment in favor of the Government and dismiss the complaint with prejudice.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director

s/J. Reid Prouty
J. REID PROUTY
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 305–7586
Fax: (202) 514-7969

July 19, 2007

Attorneys for Defendant

INDEX TO SUPPLEMENTAL APPENDIX

Limited Exclusive License Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Amendment To Two Assignments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Declaration BY Dr. Alvin J. Drehman . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20