# In the United States Court of Federal Claims

No. 03-2047 C
Filed August 30, 2007
TO BE PUBLISHED

| | |
|---|---|
| PDR, INC., Plaintiff, v. THE UNITED STATES, Defendant. | Motion for summary judgment, absence of genuine issue of material fact, contract interpretation, dismissal for lack of subject matter jurisdiction, *quantum meruit*, failure to exhaust administrative remedies, Cooperative Research and Development Agreement, disputes clause, Fifth Amendment taking, accord and satisfaction, consideration |

Philip F. Filosa, Wrentham, MA, for plaintiff.

J. Reid Prouty, Trial Attorney, Jeanne E. Davidson, Director, Commercial Litigation Branch, Civil Division, Peter D. Keisler, Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant.

**OPINION AND ORDER**

GEORGE W. MILLER, Judge.

This matter is before the Court on the Government's motion for summary judgment pursuant to Rule 56(b) of the Rules of the United States Court of Federal Claims ("RCFC"). The Government filed its motion ("Def.'s Mot.," docket entry 48) on March 9, 2007. Plaintiff PDR, Inc. filed its opposition ("Pl.'s Opp'n," docket entry 53) on May 23, 2007. The Government filed its reply ("Def.'s Reply," docket entry 58) on July 19, 2007.

The Court concludes, for the reasons set forth below, that it lacks subject matter jurisdiction over the *quantum meruit* claim set forth in Count IV of plaintiff's amended complaint. The Court further concludes that, because plaintiff failed to exhaust its administrative remedies as mandated by United States Air Force Cooperative Research and Development Agreement No. 96-RL-07, as amended ("CRADA"), with regard to the breach of contract claims set forth in Counts I and III of plaintiff's amended complaint, the Court lacks subject matter jurisdiction over plaintiff's breach of contract claims. The Court also concludes that the second amendment to the CRADA constituted a settlement and release of plaintiff's Fifth Amendment taking claim set forth in Count II of the amended complaint. Therefore, the Court grants the

Government's motion for summary judgment with respect to plaintiff's taking claim (Count II) and dismisses plaintiff's remaining claims (Counts I, III, and IV) for lack of subject matter jurisdiction.

## *BACKGROUND*[1]

On May 22, 1996, plaintiff and the Government, as represented by the Department of the Air Force, Rome Laboratory ("AFRL"),[2] entered into the CRADA. Def.'s PFUF ¶ 1; Pl.'s PFUF ¶ 1; Pl.'s App. 1. Pursuant to the CRADA, plaintiff and the AFRL worked together to develop gallium nitride ("GaN") targets for use in creating GaN semiconductor films. Def.'s PFUF ¶ 1. GaN is a group III nitride; group III nitrides are an important class of wide bandgap semiconductors, which have both military and commercial applications. Def.'s App. 10. Used to develop blue light emitting devices, including diodes and solid state lasers, GaN powder was expensive and its supply limited. *Id.* GaN cannot be melted at atmospheric pressures, and, at the time the parties entered into the CRADA, GaN powder was generally synthesized in a slow, high-temperature process. *Id.* Pursuant to the CRADA, plaintiff and the AFRL worked together to develop a commercially-viable process of depositing GaN as a thick target using a plasma spray gun. *Id.*

The CRADA was amended on May 21, 1997, to extend its term from an original 12 months to 30 months. Def.'s PFUF ¶ 2. Also in May 1997, plaintiff provided the AFRL with a GaN target made using a hot press method. Pl.'s PFUF ¶¶ 7–8. In August 1997, plaintiff produced a second GaN target, which it provided to the AFRL. *Id.* ¶ 11. Because of the sometimes contentious relationship between plaintiff and the AFRL, work on the GaN targets and other GaN research being performed under the CRADA effectively terminated prior to the CRADA's completion date of November 22, 1998. Def.'s PFUF ¶ 3; *see also* Pl.'s PFUF ¶¶ 12–29. During this period, plaintiff attempted to ascertain from the Air Force the identity of the CRADA's "Reviewing Official."[3] Pl.'s PFUF ¶¶ 23, 25. In October 1998, the Air Force

---

[1] The facts set forth herein are drawn from the Government's proposed findings of uncontroverted fact ("Def.'s PFUF," docket entry 49) and plaintiff's proposed findings of uncontroverted fact ("Pl.'s PFUF," docket entry 56), as well as the appendices to such documents. *See* RCFC 56(h). They do not constitute findings of fact by the Court.

[2] In November 1997, the Air Force's plan to close Rome Laboratories in 1999 became public knowledge. Def.'s App. 208. In the second amendment to the CRADA, the parties changed plaintiff's counterparty under the CRADA from the Air Force, Rome Laboratories, to the Air Force Research Laboratory. Def.'s App. 18. For purposes of this Opinion and Order, the Court will use "AFRL" to refer to both Rome Laboratory and to the Air Force Research Laboratory, as the context requires.

[3] The CRADA originally designated Mr. Raymond P. Urtz as its Reviewing Official. *See* Def.'s App. 2, 9. By the time work had effectively ceased on the CRADA, however, he was no

informed plaintiff that the CRADA's Reviewing Official was Mr. Lester McFawn, Director of the Sensors Directorate at AFRL. *Id.* ¶ 26; Def.'s PFUF ¶ 7. Mr. McFawn held that position from October 1997 through September 1999, at which time Mr. Donald Hanson succeeded Mr. McFawn as the Director of the Sensors Directorate and the Reviewing Official of the CRADA, positions he held until May 2005. Def.'s PFUF ¶ 7.

In order to resolve the disputes that caused the early termination of the CRADA, plaintiff and the AFRL negotiated and, in September 1999, signed a second amendment to the CRADA. Pl.'s PFUF ¶ 41; Def.'s PFUF ¶ 4; *see also* Def.'s App. 19. Pursuant to that amendment, "[t]he CRADA [was to] be extended for a six month [sic] period commencing on the signing of this amendment by the reviewing official." Def.'s App. 18–24. The Government also agreed to grant plaintiff an exclusive license to two GaN-related patent applications belonging to the Air Force, and to return to plaintiff the two GaN targets it had provided the Government. *Id.*; Pl.'s App. 94–95.

Plaintiff learned in mid-2000 that other commercial companies, including Solid State Scientific Corporation ("SSSC"), had been granted licenses for the pending patents. Pl.'s PFUF ¶ 48. Plaintiff's exclusive licensing period was to begin in September 2000, *id.* ¶ 53, so the AFRL notified SSSC in July 2000 that it intended to revoke SSSC's nonexclusive license. Pl.'s App. 118. In October 2000, the Air Force informed plaintiff that SSSC had refused to accept the notice of termination of SSSC's licenses. Pl.'s PFUF ¶ 54.

In November 2000, plaintiff wrote to the Secretary of the Air Force ("Secretary"), requesting an investigation of certain matters relating to the CRADA. *Id.* ¶ 57; Pl.'s App. 122. When plaintiff called the Secretary the next month, it discovered that the Secretary had no record of the letter, and so plaintiff faxed him a copy of the original letter. Pl.'s PFUF ¶ 58. That copy too was lost, and on January 31, 2001, plaintiff faxed a second copy of its letter to the Secretary. *Id.* ¶¶ 59–60. On that same day, plaintiff submitted a copy of the letter to the Inspector General of the Department of Defense ("Inspector General") and requested that his office investigate the matter. *Id.* ¶ 61. On February 11, 2002, the Inspector General notified plaintiff that his investigation was complete, *id.* ¶ 63, and, pursuant to plaintiff's Freedom of Information Act request, sent plaintiff a redacted copy of the "Memorandum for the File on DoD Case 79613" and redacted copies of the corresponding "Hotline Case Code Sheet." Pl.'s App. 126–32. The documents released to plaintiff reach no conclusions relating to plaintiff's complaints. *Id.*

Also in February 2002, plaintiff called the office of the Secretary and spoke with a Captain Reynolds, who advised plaintiff to submit an invoice, along with information supporting the invoiced amount, to the Secretary. In April 2002, plaintiff followed Captain Reynolds's advice and submitted an invoice for labor and material in the amount of $2.576 million. *Id.* ¶ 65; Pl.'s App. 139–45. On May 14, 2002, the Air Force rejected plaintiff's claim. Pl.'s App.

---

longer the CRADA's Reviewing Official, and plaintiff was unaware of the identity of his successor. *See, e.g.*, Pl.'s App. 75–76.

147–49. Plaintiff filed its complaint (docket entry 1) on September 5, 2003, and filed an amended complaint ("Am. Compl.," docket entry 18) on August 27, 2004, asserting claims for the Government's breach of the CRADA and the taking of plaintiff's property, as well as a *quantum meruit* claim asserting that, after plaintiff succeeded in developing a cost-effective method for the development of GaN, the Government "appropriated the Plaintiff's technology and mirrored Plaintiff's patent with patents of its own for the same process of producing the sought after targets." Am. Compl. ¶¶ 69–84.

On July 5, 2005, the parties informed the Court that plaintiff had filed a voluntary Chapter 7 bankruptcy petition, and requested that the Court defer further proceedings in this case until plaintiff's Chapter 7 trustee had decided whether to compromise or abandon the claims asserted by plaintiff in this action. Status Report (docket entry 29, July 5, 2005) 1–2. On January 30, 2006, the Chapter 7 trustee informed plaintiff's creditors that she had determined that the claims had no net value to the bankruptcy estate and, unless one or more of the creditors filed an objection, the claims "will be deemed abandoned by the Trustee." Status Report (docket entry 37, Jan. 31, 2006) 1 and Attachment. Counsel for both parties further advised the Court in their joint status report that upon abandonment, the claims "will be returned to the control of plaintiff PDR, Inc." *Id.* No objection was filed, and plaintiff resumed the pursuit of its claims in this action. Status Report (docket entry 39, Mar. 10, 2006) 1.

## ***DISCUSSION***

### I. Standard of Review

The Court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986). A fact is material if it might affect the outcome of the suit. *Anderson*, 477 U.S. at 248.

"The moving party bears the burden of demonstrating the absence of a genuine question of material fact . . . ." *O'Connor v. United States*, 308 F.3d 1233, 1240 (Fed. Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The movant may discharge its burden by "demonstrat[ing] that there is an absence of evidence to support the nonmoving party's case." *Doe v. United States*, 48 Fed. Cl. 495, 500 (2000) (citing *Celotex*, 477 U.S. at 325). Once the movant has met its burden, the nonmovant must "proffer countering evidence sufficient to create a genuine factual dispute" in order to avoid summary judgment. *Sweats Fashions, Inc. v. Pannill Knitting Co.*, 833 F.2d 1560, 1562 (Fed. Cir. 1987). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). The nonmovant may not rely upon its pleadings or conclusory allegations to demonstrate a factual dispute, but rather must set forth specific facts that establish an issue for trial, by affidavit or otherwise, such that the trier

of fact could reasonably find in the nonmovant's favor. *Bromley Contracting Co. v. United States*, 15 Cl. Ct. 100, 105 (1988).

The resolution of the Government's motion hinges, in part, on the interpretation of the CRADA. "Contract interpretation is a question of law that is particularly well suited for summary judgment." *Travelers Cas. & Sur. Co. of Am. v. United States*, 75 Fed. Cl. 696, 703 (2007) (citing *Gov. Sys. Advisors, Inc. v. United States*, 847 F.2d 811, 812 n.1 (Fed. Cir. 1988)). However, the interpretation of "language, conduct and parties' intent . . . may sometimes involve questions of material fact and not present a pure question of law." *Id.* (citing *Beta Systems, Inc. v. United States*, 838 F.2d 1179, 1183 (Fed. Cir. 1988)).

## II. Analysis

### A. Jurisdiction

Like all federal courts, the Court of Federal Claims is a court of limited jurisdiction. *RHI Holdings, Inc. v. United States*, 142 F.3d 1459, 1461 (Fed. Cir. 1998). The parties may, at any time in the proceeding, challenge the Court's subject matter jurisdiction. *Grosdidier v. United States*, 77 Fed. Cl. 106, 107 (2007) (citing *Booth v. United States*, 990 F.2d 617, 620 (Fed. Cir. 1993)). Even if neither party files a RCFC 12(b)(1) motion challenging the Court's subject matter jurisdiction, RCFC 12(h)(3) requires the Court to consider whether the parties' claims fall within its subject matter jurisdiction. *See Pierce v. United States*, 76 Fed. Cl. 638, 650 (2007). "[T]he jurisdiction of the Court of Federal Claims . . . is prescribed by the metes and bounds of the United States' consent to be sued in its waiver of immunity." *RHI Holdings*, 142 F.3d at 1461 (citing *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Such consent to be sued "will be strictly construed, in terms of its scope, in favor of the sovereign." *Lane v. Pena*, 518 U.S. 187, 192 (1996). The Tucker Act states that "[t]he United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution . . . or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1) (2000).

Count IV of the amended complaint refers to the Government's "mirror[ing] Plaintiff's patent with patents of its own," Am. Compl. ¶ 84, without compensating plaintiff after plaintiff had expended the time and resources necessary to develop a cost-effective method for producing GaN targets. *Id.* ¶ 83. Plaintiff characterizes its claim under Count IV as one for *quantum meruit* (*i.e.*, "[a] claim or right of action for the reasonable value of services rendered," BLACK'S LAW DICTIONARY 1276 (8th ed. 2004)), based on the work plaintiff performed in developing the GaN targets. *Quantum meruit* is an equitable remedy, *Perri v. United States*, 53 Fed. Cl. 381, 408 (2002), and a "recovery in quantum meruit is based on an implied-in-law contract." *Int'l Data Prods. Corp. v. United States*, 492 F.3d 1317, ---, 2007 WL 1827842, at *6 (Fed. Cir. 2007). The Court of Federal Claims lacks subject matter jurisdiction over claims arising out of implied-in-law contracts. *Hercules v. United States*, 516 U.S. 417, 423 (1996); *see also Int'l Data Prods. Corp.*, 492 F.3d at ---, 2007 WL 1827842, at *6; *Sealey v. United States*, 71 Fed. Cl. 278, 284

(2006). Thus, Count IV of the amended complaint, which sets forth plaintiff's *quantum meruit* claim, must be dismissed for lack of subject matter jurisdiction.

### B. Plaintiff's Claims for Breach of the CRADA Must Be Dismissed for Lack of Subject Matter Jurisdiction Because Plaintiff Has Failed to Exhaust Its Administrative Remedies

The Government argues that plaintiff failed to exhaust the administrative remedies prescribed by the CRADA and that, therefore, plaintiff's suit must be dismissed. Def.'s Mot. 3. Plaintiff responds that it had difficulty in ascertaining the identity of the Reviewing Official. Pl.'s Opp'n 2. Plaintiff further argues that the CRADA failed to describe how a formal request for dispute resolution could be made. *Id.* at 3. Finally, to the Government's assertion that it did not submit a timely appeal from the decision of the Reviewing Official, plaintiff responds that there was no decision from which it could appeal. *Id.*

The CRADA contained a dispute resolution clause which prescribed the steps the parties were to take in the event of a dispute:

> 8.4 Disputes. All disputes arising out of, or related to, this AGREEMENT shall be resolved in accordance with this Article.
>
> 8.4.1 The Parties shall attempt to resolve disputes between themselves. Any dispute which is not disposed of by agreement of the Parties shall be referred to the REVIEWING OFFICIAL for decision.
>
> 8.4.2 REVIEWING OFFICIAL. The REVIEWING OFFICIAL shall within sixty (60) days of the receipt of the dispute, notify the Parties of the decision. This decision shall be final and conclusive unless, within thirty (30) days from the date of receipt of such copy, either Party submits to the REVIEWING OFFICIAL, a written appeal addressed to the Secretary of the Air Force.
>
> 8.4.3 Secretary of the Air Force. The decision of the Secretary of the Air Force, or his duly authorized representative, on the appeal shall be final and conclusive.

Def.'s App. 5.

Where a Cooperative Research and Development Agreement, or any other contract with the Government not covered by the Contract Disputes Act of 1978 ("CDA"), 41 U.S.C.

§§ 601–13 (2000),[4] contains a disputes clause which provides a specific administrative remedy for a dispute, "the contractor must exhaust its administrative contractual remedies prior to seeking judicial relief." *Me. Yankee Atomic Power Co. v. United States*, 225 F.3d 1336, 1340 (Fed. Cir. 2000) (citing *McKart v. United States*, 395 U.S. 185, 193 (1969)); *see also Crown Coat Front Co. v. United States*, 386 U.S. 503, 512 (1967) ("It is now crystal clear that the contractor must seek the relief provided for under the contract or be barred from any relief in the courts."). Where a contractor is required to pursue administrative remedies, its failure to exhaust those remedies deprives the court of subject matter jurisdiction over its claims. *JCM, Ltd. v. United States*, 210 F.3d 1357, 1360 (Fed. Cir. 2000). Because the CRADA contains a disputes clause, "in the absence of some clear evidence that the appeal procedure is inadequate or unavailable, that procedure must be pursued and exhausted before a contractor can be heard to complain in a court." *United States v. Joseph A. Holpuch Co.*, 328 U.S. 234, 240 (1946).

According to affidavits furnished by Mr. McFawn and Mr. Hanson, the Reviewing Officials for the CRADA, neither has any recollection of receiving a request from plaintiff to resolve a dispute pursuant to Section 8.4.2 of the CRADA. Def.'s App. 28–30. In response to the affidavits, plaintiff did not provide the Court with any evidence of its having requested dispute resolution; instead, plaintiff argues that it could not make such a formal request because "the CRADA . . . fails to describe how such a formal request [for dispute resolution] should be made." Pl.'s Opp'n 2–3. Rather than make a formal request, "through its own efforts and that of its attorney, Plaintiff found the name of the reviewing official [and] spoke with him." *Id.* at 3. Although plaintiff claims that it had no way of knowing how to make a formal request, plaintiff seems to imply that its attempt at uncovering the identity of the Reviewing Official should have been sufficient to fulfill its obligations under the disputes clause.

Plaintiff has not presented any evidence demonstrating that the appeal procedure was "inadequate or unavailable." *Joseph A. Holpuch Co.*, 328 U.S. at 239. In fact, plaintiff was able to informally resolve its grievances that arose prior to the signing of the second amendment to the CRADA. Pl.'s Opp'n 2–4. Plaintiff concedes that it was satisfied with the result of negotiations culminating in the second amendment to the CRADA. *See* Pl.'s Opp'n 3 ("Plaintiff was satisfied with the out come [sic] of the negotiations and the decision to grant it exclusive licenses to the Defendant's patents as reflected in the Second Amendment to the CRADA."). If it was satisfied, there would appear to be no issue for plaintiff to refer to the Reviewing Official or submit to the

---

[4] The CDA governs contracts entered into with the executive branch for the procurement of property, of services, or of construction, alteration, repair, or maintenance of real property, as well as contracts for the disposal of personal property. 41 U.S.C. § 602(a). As part of the Federal Technology Transfer Act of 1986, 15 U.S.C. § 3710a *et seq.* (2000), Congress "intended to establish a new type of contractual relationship between a federal laboratory and a non-federal party for research and development purposes." *Chem Serv. v. Environmental Monitoring Sys. Laboratory-Cincinnati*, 12 F.3d 1256, 1258 (3d Cir. 1993). In order to memorialize this new contractual relationship, Congress created the Cooperative Research and Development Agreement, with the specific intent that it not be a procurement contract. *Id.*

Secretary, pursuant to the disputes clause, and, therefore, no issue for plaintiff to bring before this Court. Moreover, even if plaintiff were dissatisfied, or if plaintiff become dissatisfied, with the results, it failed allege that it submitted a written appeal of the Reviewing Official's decision to the Secretary, as required by Section 8.4.3 of the CRADA. Although plaintiff ultimately did contact the Secretary, plaintiff itself argues that its communications to the Secretary were not "an appeal of a decision of the reviewing official, [but] rather a request for an investigation of an outrageous situation at AFRL causing ongoing harm to the Plaintiff." *Id.*

The Court finds that there is no genuine issue of material fact with respect to the Government's contention that, in contravention of the CRADA's requirements, plaintiff failed to exhaust its administrative remedies before bringing suit in this Court. Inasmuch as it did not request that the Reviewing Official resolve any dispute, or appeal any such resolution to the Secretary, Counts I and III of plaintiff's amended complaint must be dismissed for failure to exhaust administrative remedies, which the Court treats as a basis for dismissal for lack of subject matter jurisdiction. *JCM, Ltd. v. United States*, 210 F.3d 1357, 1360 (Fed. Cir. 2000).

Despite successfully resolving its earlier disputes with AFRL, plaintiff fails to allege that it referred a dispute to the Reviewing Official or an appeal to the Secretary regarding its allegations in Count IV that the Government breached the second amendment to the CRADA. Thus, even if the Court otherwise possessed subject matter jurisdiction over the claims set forth in Count IV, those claims would have to be dismissed for lack of subject matter jurisdiction on the independent ground of failure to exhaust administrative remedies.

The Court declines, however, to dismiss plaintiff's taking claim for failure to exhaust administrative remedies. "[T]here is no duty to exhaust administrative remedies prior to bringing a takings claim." *Devon Energy Corp. v. United States*, 45 Fed. Cl. 519, 529 (1999) (citing *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 192–93 (1985)). Because plaintiff had no duty to exhaust administrative remedies contained in the CRADA prior to pursuing its taking claim, the Court declines to dismiss that claim for lack of subject matter jurisdiction.

### C. The Government Is Entitled to Summary Judgment on the Merits of Plaintiff's Taking Claim, and if the Court had Subject Matter Jurisdiction, Would Be Entitled to Summary Judgment on Plaintiff's Contract Claim Set Forth in Count I and on Plaintiff's *Quantum Meruit* Claim Set Forth in Count IV

The Government presents two additional grounds in support of its motion for summary judgment. First, the Government argues that the second amendment to the CRADA constituted an accord and satisfaction of plaintiff's claims that arose prior to the signing of the amendment in August 1999, including its taking claim. Def.'s Mot. 3. Second, the Government argues that the technology which plaintiff developed and alleges the Government wrongfully appropriated and "mirrored" in its own patents was not new to or used by the Air Force. *Id.* Because the Court

has found that Counts I, III, and IV of the amended complaint must be dismissed for lack of subject matter jurisdiction, it is unnecessary to reach the Government's grounds for summary judgment with regard to those counts. Nonetheless, for completeness in addressing the Government's motion, in addition to addressing plaintiff's taking claim set forth in Count II of the amended complaint (over which the Court has jurisdiction), the Court will consider those other grounds briefly. *See, e.g., Parker Beach Restoration, Inc. v. United States*, 58 Fed. Cl. 126, 131 (2003).

1. <u>There Is No Genuine Issue of Material Fact With Respect to the Government's Contention That the Second Amendment to the CRADA Constituted an Accord and Satisfaction of Plaintiff's Taking Claim, As Well As Its Other Claims That Predated the Second Amendment</u>

"Accord and satisfaction denotes 'one of the recognized methods of discharging and terminating an existing right' and constitutes 'a perfect defense in an action for the enforcement of a previous claim, whether that claim was well founded or not.'" *Chesapeake & Potomac Tel. Co. v. United States*, 228 Ct. Cl. 101, 108, 654 F.2d 711, 716 (1981) (citing 6 CORBIN ON CONTRACTS § 1276 (1962)). An accord and satisfaction occurs when "'some performance different from that which was claimed as due is rendered and such substituted performance is accepted by the claimant as full satisfaction of his claim.'" *O'Connor*, 308 F.3d at 1240 (quoting *Case, Inc. v. United States*, 88 F.3d 1004, 1011 n.7 (Fed. Cir. 1996)). A valid accord and satisfaction consists of four elements: (1) proper subject matter; (2) competent parties; (3) consideration; and (4) a meeting of the minds. *Id.* Accord and satisfaction is an affirmative defense, upon which defendant has the burden of persuasion. *See O'Connor v. United States*, 60 Fed. Cl. 164, 168 (2004).

The Government argues that the second amendment to the CRADA constituted an accord and satisfaction of plaintiff's claims that predated the signing of the amendment. Def.'s Mot. 7–8. Plaintiff's claims predating the second amendment to the CRADA include all of the allegations giving rise to Counts I and II of plaintiff's amended complaint. Count I deals with the violation of the CRADA prior to its second amendment, Am. Compl. ¶¶ 69–75, while Count II, in addition to restating plaintiff's allegation that the Government failed to comply with the CRADA, sets forth a Fifth Amendment taking claim, based on the Government's locking plaintiff out of the Hanscom Air Force Base laboratory and seizing plaintiff's equipment and intellectual property. *Id.* ¶ 78. Although plaintiff's proposed findings of uncontroverted fact do not mention the Government's locking plaintiff out or taking its property, according to the amended complaint, these actions occurred in May 1998. *Id.* ¶ 31. The second amendment to the CRADA was signed more than a year later, in September 1999. Pl.'s PFUF ¶ 41. If the second amendment to the CRADA constituted an accord and satisfaction, then, it would preclude plaintiff's taking claim, which came into existence in May 1998.

Plaintiff concedes that the second amendment to the CRADA would have served as an accord and satisfaction, settling all disputes between the parties existing as of its effective date,

had the Government met its obligations under the CRADA. It argues, however, that the Government "failed to grant the exclusive licenses to the technology which it had already licensed to other parties," and that, because it "breached its agreements contained in the Second Amendment . . . there was no accord and satisfaction." Pl.'s Opp'n 4. The Government replies that the agreement itself constituted both an accord and a satisfaction but, in any event, the Government complied with its obligations, including granting to plaintiff the disputed exclusive licenses, as required by the second amendment to the CRADA. Def.'s Reply 5–6.

In essence the Court understands plaintiff to agree with the Government that, by signing the second amendment to the CRADA, the parties intended to effect an accord and satisfaction of all claims predating the second amendment and that the first, second, and fourth elements required for a valid accord and satisfaction (*i.e.*, proper subject matter, competent parties, and a meeting of the minds) were present in the second amendment to the CRADA. Plaintiff appears to argue that the Government failed, however, to perform certain of its obligations under the second amendment, and that failure effectively negated the third element of a valid accord and satisfaction, *i.e.*, consideration in exchange for the termination of plaintiff's preexisting claims.

"[A] valid accord and satisfaction must be supported by consideration." *Thomas Creek Lumber & Log Co. v. United States*, 36 Fed. Cl. 220, 242 (1996). To effect a valid accord and satisfaction, the parties must exchange consideration that constitutes a payment or performance in satisfaction of the claim or demand at issue. *Id.* (citing *Brock & Blevins v. United States*, 170 Ct. Cl. 52, 59, 343 F.2d 951, 955 (1965); *Nevada Half Moon Mining Co. v. Combined Metals Reduction Co.*, 176 F.2d 73, 76 (10th Cir. 1949)). Consideration consists of a "'detriment incurred by the promisee, or a benefit received by the promisor at the request of the promisor.'" *Ahrens v. United States*, 62 Fed. Cl. 664, 672 (2004) (quoting *Estate of Bogley v. United States*, 206 Ct. Cl. 695, 705, 514 F.2d 1027, 1033 (1975)).

Plaintiff's argument that the Government breached the terms of the second amendment to the CRADA by failing to grant plaintiff exclusive licenses, whether or not correct,[5] is irrelevant to the Court's analysis of whether the parties effected an accord and satisfaction of plaintiff's claims that predated the second amendment. The second amendment to the CRADA states:

---

[5] The Government argues that "exclusive license" is a term of art that does not foreclose its prior licensing of some rights to other parties, and argues further that the party that held the prior rights waived them. Def.'s Reply 6–7. Because the Court finds that there was consideration sufficient to support an accord and satisfaction independent of the alleged promise to grant plaintiff exclusive licenses, it is unnecessary for the Court to determine whether plaintiff met its burden of identifying a genuine issue of material fact with regard to the Government's breach of the second amendment to the CRADA. Even if plaintiff had done so, however, the Court would be required to dismiss plaintiff's claim that defendant breached the amended CRADA by failing to grant plaintiff exclusive licenses because plaintiff failed to exhaust its administrative remedies.

**7.** In Article 8.1, add new paragraph 8.1.1 as follows:

> 8.1.1 A first amendment extended the CRADA for 30 months until 22 November 1998. As a result of a dispute(s) [sic], work was effectively terminated before this date. *This revival of the CRADA implements the resolution of that dispute.* The CRADA shall be extended for a six month period commencing on the signing of this amendment [*i.e.*, the second amendment] by the reviewing official.

Def.'s App. 19 (emphasis added). While true that the AFRL's return to plaintiff of its property, as well as its granting the exclusive licenses to plaintiff, were terms of the amended CRADA, *id.* at 18–19, the plain language of the second amendment to the CRADA states that the revival and six-month extension of the CRADA was the bargained-for consideration, and that, in return for such revival and extension, plaintiff agreed that the dispute or disputes referenced in the second amendment to the CRADA were resolved. Plaintiff has not alleged that, in signing and implementing the second amendment, it did not intend to settle its taking claim and its breach of contract claim; in fact, plaintiff has conceded as much. Pl.'s Opp'n 4 ("Defendant argues that the Second Amendment acted as an accord and satisfaction settling all disputes between Plaintiff and Defendant. This would have been true had the Defendant performed its part of the bargain . . . ."). Further, plaintiff has not alleged that the CRADA was not revived and extended for six months; its allegation is that the Government breached the revived CRADA. The alleged breach, however, does not invalidate the accord and satisfaction entered into by the parties. The Court finds that the signing of the second amendment of the CRADA effected an accord and satisfaction of plaintiff's taking claim set forth in Count II of the amended complaint. Furthermore, assuming *arguendo* that the claims set forth in Count I of the amended complaint, which alleged violations of the CRADA occurring prior to the second amendment, were not precluded by plaintiff's failure to exhaust its administrative remedies, the Court would nonetheless find that there is no genuine issue of material fact with respect to the defense of accord and satisfaction, and the Government would be entitled to judgment as a matter of law that the second amendment to the CRADA constituted an accord and satisfaction of plaintiff's claims that predated the second amendment, including the claims set forth in both Counts I and II.

2. Even if the Court Had Subject Matter Jurisdiction Over Plaintiff's *Quantum Meruit* Claim, Plaintiff Has Not Proffered Any Evidence That Would Create a Genuine Issue of Material Fact and Defendant Would Be Entitled to Judgment as a Matter of Law on That Claim

In Count IV of the amended complaint, plaintiff states that it developed a commercially viable process for the manufacture of GaN targets—a process that was unavailable prior to plaintiff's work under the CRADA—and delivered two targets manufactured by this process to the Government. Am. Compl. ¶¶ 82–83. Plaintiff then alleges that "Defendant appropriated the Plaintiff's technology and mirrored Plaintiff's patent with patents of its own for the same process of producing the sought after targets, i.e., with the use of ammonium salts." *Id.* ¶ 84.

The Government argues that the four Air Force patents which plaintiff claims mirrored its technology used no technology or ideas provided by plaintiff. Def.'s Mot. 10. In his deposition, plaintiff's expert, Dr. David B. Hatfield, testified that two major components comprised plaintiff's patent: the use of ammonium salts and of hot pressing. Def.'s App. 49. According to Dr. Hatfield, the Government's use of ammonium salts predated plaintiff's participation with the AFRL in GaN research. *Id.*; *see also* Def.'s Mot. 10. Additionally, Dr. Hatfield testified that the Government's patents did not use hot pressing. Def.'s App. 49.

In response, plaintiff asserts that the questions whether the Government's patents used ammonium salts and whether they used hot pressing is not determinative of whether they mirrored plaintiff's technology and, in fact, not relevant to that inquiry; rather, "[t]he reason the Defendant's two patents mirror the Plaintiff's technology is due to the use of the ammonium salts in a manner which allows the stabilization of GaN to be either transported to another medium or to be densified into a target." Pl.'s Resp. 6. The Government replies that by so responding, plaintiff "completely shifts the theory of its claim," Def.'s Reply 8, but that, nonetheless, plaintiff's "newly framed allegation is demonstrably untrue." *Id.* at 9.

It is not clear to the Court that the theory plaintiff proposes in its response represents a shift from the claim it raised in Count IV of its amended complaint, which was that the Government's patents mirrored plaintiff's technology because the patents used ammonium salts. Nonetheless, plaintiff has failed to meet its burden of producing evidence sufficient to raise a genuine issue of material fact with respect to its *quantum meruit* claim. The Government presented deposition testimony that, in developing its patents, the Air Force did not rely on, or in any way mirror, ideas or technology newly provided by plaintiff. Although plaintiff disagrees with the Government, it has not pointed to any specific facts, contained in affidavits or elsewhere, which would give rise to a material factual dispute between the parties with respect to Count IV of its amended complaint. It is insufficient for plaintiff, in opposing the Government's motion for summary judgment, to rely on its pleadings and conclusory allegations to establish the existence of a genuine issue of material fact. *See Bromley Contracting Co.*, 15 Cl. Ct. at 105. Because plaintiff has failed to meet its burden, even if the Court had subject matter jurisdiction the Court would grant summary judgment in favor of defendant on the merits of plaintiff's *quantum meruit* claim.

## ***CONCLUSION***

Based upon the foregoing, the Court finds that plaintiff has failed to exhaust its administrative remedies relating to its contract claims (Counts I and III). Those claims must therefore be dismissed for lack of subject matter jurisdiction. Plaintiff's *quantum meruit* claim (Count IV) must also be dismissed for lack of subject matter jurisdiction because that claim is founded upon an alleged contract implied in law. The Government is entitled to judgment as a matter of law on plaintiff's taking claim set forth in Count II of plaintiff's amended complaint because there is no genuine issue of material fact with respect to defendant's contention that plaintiff's taking claim was settled and released by the second amendment to the CRADA.

Accordingly, the Clerk is directed to enter judgment, pursuant to RCFC 56(c), in favor of defendant with respect to Count II, and to dismiss Counts I, III, and IV without prejudice for lack of subject matter jurisdiction, pursuant to RCFC 12(h)(3).

IT IS SO ORDERED.

s/ George W. Miller
GEORGE W. MILLER
Judge